## NATIONAL BANK v. INSURANCE COMPANY.

1. When a party states, in his application for an insurance, that he has made a just, full, and true exposition of all material facts and circumstances in regard to the condition, situation, value, and risk of the property, so far as known to him, and the application is expressly made a part of the policy, should it afterwards appear that he overestimated the value of the property, the policy would not be vitiated, unless it be shown that the estimate was intentionally excessive.

2. When a policy contains contradictory provisions, or is so framed as to render it doubtful whether the parties intended that the exact truth of the applicant's statements should be a condition precedent to any binding contract, that construction which imposes upon the assured the obligations of a warranty should not be favored.

3. The policy having been prepared by the insurers, it should be construed most strongly against them.

ERROR to the Circuit Court of the United States for the Western District of Missouri.

This is an action on a policy of insurance issued by the Hartford Fire Insurance Company to W. D. Oldham, on certain mill property, building, and machinery, and by him transferred and assigned to the First National Bank of Kansas City, Mo. The parties, by written stipulation, waived a jury; and, upon a special finding of facts, the Circuit Court gave judgment for the company. The bank thereupon sued out this writ of error.

It appears from the special finding, that, by the terms of the application, the assured was required to state separately " the estimated value of personal property and of each building to be insured, and the sum to be insured on each; . . . the value of the property being estimated by the applicant." The applicant was also directed to answer certain questions, and sign the same " as a description of the premises on which the insurance will be predicated." Among the questions to be answered were:

" What is the cash value of the buildings, aside from hand and water power? What is the cash value of the machinery?" The answer was: "$15,000, building; $15,000, machinery."

The application concludes with these words:—

"And the said applicant hereby covenants and agrees to and with said company, that the foregoing is a just, full, and true exposition of all the facts and circumstances in regard to the condition, situation, value, and risk of the property to be insured, so far as the same are known to the applicant, and are material to the risk."

The policy refers to the application in these words:—

"Special reference being had to assured's application and survey, No. 1462, on file, which is his warranty, and a part hereof."

The policy further recites:—

"If an application, survey, plan, or description of the property herein insured is referred to in this policy, such application, survey, plan, or description shall be considered a part of this policy, and a warranty by the assured; and if the assured, in a written or verbal application, makes any erroneous representation, or omits to make known any fact material to the risk, . . . then, and in any such case, this policy shall be void. . . . Any fraud or attempt at fraud, or any false swearing on the part of the assured, shall cause a forfeiture of all claim under this policy."

The policy also declares that it is made and accepted upon the above, among other, express conditions.

It is found by the court that when the policy was issued, as well as at the date of the destruction of the property by fire, the cash value of the building, aside from hand and water power, was $8,000, and no more; and the cash value of the machinery, at the same dates, was $12,000, and no more.

The court also found that "the answers made by the assured to the questions contained in the application were made by him in good faith, without any intention on his part to commit any fraud on the defendant."

It is further declared in the special finding, that, "under the provisions of the policy and application, made part thereof, the court finds, as a conclusion of law, that the answers of the assured as to the value of the property insured defeat the right to recover on the policy."

*Mr. John K. Cravens* for the plaintiff in error cited May on Ins., sects. 156, 160, 164, 168, 169; *Elliot* v. *Hamilton Mutual Insurance Co.*, 13 Gray (Mass.), 139; *Fitch* v. *American Popular Life Insurance Co.*, 59 N. Y. 55℞; *Germania Fire Insurance Co.* v. *Casteel*, 9 Chicago Legal News, 374; *Franklin Insurance Co.* v. *Vaughan*, 92 U. S. 516; *Yeaton* v. *Fry*, 5 Cranch, 342.

*Mr. John C. Gage, contra,* cited *Owens* v. *Holland Purchase Insurance Co.*, 56 N. Y. 565; *First National Bank of Ballston Spa* v. *Insurance Company of North America*, 50 id. 45; *Ripley* v. *The Ætna Insurance Co.*, 30 id. 136; *Ætna Life Insurance Co.* v. *France et al.*, 91 U. S. 110; *Jeffries* v. *Life Insurance Co.*, 22 Wall. 47; *Leroy* v. *The Market Fire Insurance Co.*, 39 N. Y. 90; *Conover* v. *The Massachusetts Insurance Co.*, 3 Dill. 217; *Miles et al.* v. *Connecticut Mutual Life Insurance Co.*, 3 Gray (Mass.), 580; *Campbell* v. *New England Mutual Life Insurance Co.*, 98 Mass. 381; *Cooper* v. *Farmers' Mutual Fire Insurance Co.*, 50 Pa. St. 305.

MR. JUSTICE HARLAN delivered the opinion of the court.

On behalf of the company, it is contended that, under any proper construction of the contract, the assured warranted, absolutely and without limitation, the truth of the several statements in the application, including the statement as to the value of the property. If this view be sound, the judgment of the Circuit Court must be affirmed; otherwise, it must be reversed.

Our conclusion is that the plaintiff in error, who is the beneficiary of the policy, is entitled to a judgment, notwithstanding the overvaluation of the property by the assured.

The entire application having been made, by express words, a part of the policy, it is entitled to the same consideration as if it had been inserted at large in that instrument. The policy and application together, therefore, constitute the written agreement of insurance; and, in ascertaining the intention of the parties, full effect must be given to the conditions, clauses, and stipulations contained in both instruments.

Looking first into the application, we find no language which, by fair construction, was notice to the assured that, in answering questions, he was assuming, or was expected to assume, the

strict obligations which the law attaches to a warranty. There is no intimation anywhere in that instrument that the exact truth of the answers was a condition precedent, either to the consideration of the application or to the issuing of a policy. On the contrary, the application contains the covenant of the assured that he had in that instrument made a just, full, and true exposition of all material facts and circumstances in regard to the condition, situation, value, and risk of the property, so far as known to him. The taking of that covenant, at the threshold of the negotiations, was, in effect, an assurance that a frank statement of all such material facts as were within the knowledge of the applicant would meet the requirements of the company. It was a covenant of good faith on the part of the assured, — nothing more; and, so far as it related to the value of the property, was not broken, unless the estimates by the assured were intentionally excessive. If the case turned wholly upon the construction to be given to the application, it is quite clear that the overvaluation of the property would not defeat a recovery upon the written agreement, since the assured, by the special finding, is acquitted of any purpose to defraud the company. That is equivalent to saying that the assured did not withhold any material fact within his knowledge concerning the condition, situation, value, or risk of the property.

But the difficulty in the case arises from the peculiar wording of the policy, considering the application as a part thereof. While the assured in one part of the written agreement is made to stipulate for a warranty, and in another the policy is declared to be void if the assured "makes any erroneous representation, or omits to make known any fact material to the risk," in still another part of the same agreement — the application — he covenants that, as to all material facts within his knowledge, respecting the condition, situation, value, and risk of the property, he has made a full, just, and true exposition. If the purpose of the company was to secure a warranty of the correctness of each statement in the application, and if the court should adopt that construction of the contract, there could be no recovery on the policy, if any one of these statements were proven to be untrue; and this, although such statement may have been wholly immaterial to the risk, and was made without

any intent to mislead or defraud. Such a construction, according to established doctrine, might defeat the recovery, even if the overvaluation had been so slight as not to have influenced the company in accepting the risk. But if such was the purpose of the company, why did it not stop with the express declaration of a warranty? Why did it go further, and incorporate into the policy a provision for its annulment in the event the assured should make an "erroneous representation, or omit to make known any fact material to the risk"? — language inconsistent with the law of warranty. Still further, why did the company make the application a part of the policy, and thereby import into the contract the covenant of the assured, not that he had stated every fact material-to the risk, or that his statements were literally true, but only that he had made a just, true, and full exposition of all material facts, so far as known to him.

It is the duty of the court to reconcile these clauses of the written agreement, if it be possible to do so consistently with the intention of the parties, to be collected from the terms used.

It will be observed, from an examination of the questions propounded to the assured, that, among other things, he was asked whether the building was of stone, brick, or wood; how the premises were warmed; what materials were used for lighting them; whether a watchman was kept during the night; what amount of insurance was already on the property; whether it was mortgaged, &c. These and similar questions refer to matters of which the assured had actual knowledge, or about which he might, with propriety, be required to speak with perfect accuracy. They are matters capable of precise ascertainment, and in no sense depending upon estimate, opinion, or mere probability. But his situation and duty were wholly different when required to state the cash value of his property. He was required to give its "estimated value." His answers concerning such value were, in one sense, and, perhaps, in every just sense, only the expression of an opinion. The ordinary test of the value of property is the price it will command in the market if offered for sale. But that test cannot, in the very nature of the case, be applied at the time application is

made for insurance. Men may honestly differ about the value of property, or as to what it will bring in the market; and such differences are often very marked among those whose special business it is to buy and sell property of all kinds. The assured could do no more than estimate such value; and that, it seems, was all that he was required to do in this case. His duty was to deal fairly with the company in making such estimate. The special finding shows that he discharged that duty and observed good faith. We shall not presume that the company, after requiring the assured in his application to give the "estimated value," and then to covenant that he had stated all material facts in regard to such value, so far as known to him, and after carrying that covenant, by express words, into the written contract, intended to abandon the theory upon which it sought the contract, and make the absolute correctness of such estimated value a condition precedent to any insurance whatever. The application, with its covenant and stipulations, having been made a part of the policy, that presumption cannot be indulged without imputing to the company a purpose, by studied intricacy or an ingenious framing of the policy, to entrap the assured into incurring obligations which, perhaps, he had no thought of assuming.

Two constructions of the contract may be suggested. One is to regard the warranty expressed in the policy as limited or qualified by the terms of the application. In that view, the assured would be held as only warranting that he had stated all material facts in regard to the condition, situation, value, and risk of the property, so far as they were known to him. This is, perhaps, the construction most consistent with the literal import of the terms used in the application and the policy. The other construction is to regard the warranty as relating only to matters of which the assured had, or should be presumed to have had, distinct, definite knowledge, and not to such matters as values, which depend upon mere opinion or probabilities. But, without adopting either of these constructions, we rest the conclusion already indicated upon the broad ground that when a policy of insurance contains contradictory provisions, or has been so framed as to leave room for construction, rendering it doubtful whether the parties intended the

exact truth of the applicant's statements to be a condition precedent to any binding contract, the court should lean against that construction which imposes upon the assured the obligations of a warranty. The company cannot justly complain of such a rule. Its attorneys, officers, or agents prepared the policy for the purpose, we shall assume, both of protecting the company against fraud, and of securing the just rights of the assured under a valid contract of insurance. It is its language which the court is invited to interpret, and it is both reasonable and just that its own words should be construed most strongly against itself.

Wherefore, as it does not clearly appear that the parties intended that the validity of the contract of insurance should depend upon the absolute correctness of the estimates of value, and as it does appear that such estimates were made by the assured without any intention to defraud, our opinion is that the facts found do not support the judgment.

The judgment will, therefore, be reversed, and the cause remanded with directions to enter a judgment upon the special finding for the plaintiff in error; and it is

*So ordered.*