McMASTER v. NEW YORK LIFE INS. CO.

(Circuit Court, N. D. Iowa. W. D. January 4, 1897.)

1. LIFE INSURANCE—POLICY—AMBIGUOUS PROVISIONS.
   Ambiguous provisions in a policy of life insurance must be construed most favorably to the insured.

2. SAME—CONSTRUCTION OF CONTRACT—FORFEITURES.
   A contract of life insurance should be so construed as to avoid a forfeiture, when it may be fairly done.

3. SAME—LIFE POLICY—CONTINUING CONTRACT.
   A life policy, delivered upon payment of the first year's premiums, is a continuing contract for the life of the insured, subject to be forfeited for nonpayment of premiums, and not merely a contract for a year, renewable by payment of subsequent premiums.

4. SAME—CONSTRUCTION OF POLICY BY AGENT—STATUTE.
   Under a statute providing that any person procuring applications for insurance shall be held to be the soliciting agent of the company issuing a policy thereon, a construction placed upon a clause in the policy by the soliciting agent, as an inducement to the insured to enter into the contract, is binding upon the company.

5. SAME—CONTRACT OF AGENT—NONPAYMENT OF PREMIUMS—FORFEITURE FOR.
   Defendant's agent, in soliciting the insurance, called attention to a provision in the policies that, after they had been in force three months, "a grace of one month shall be allowed in payment of subsequent premiums," and represented that, if the insured should pay the first year's premiums upon delivery of the policies, they could not be forfeited for nonpayment of premiums for 13 months. The statute (Laws Iowa, 1880, c. 211) governing the contract provides that any person procuring applications for insurance shall be held to be the soliciting agent of the company issuing a policy thereon. The policies were dated December 18, 1893, and were delivered on December 26th, but they contained a provision, inserted without the knowledge or consent of the insured, that subsequent premiums should be paid on December 12th of each year. The first year's premiums were paid upon delivery of the policies, and none were afterwards paid. The insured died on January 18, 1895. Held, that the policies were in force at his death.

6. SAME—REFORMATION OF POLICY.
   In such a case, even if it be conceded that the company might declare the policies forfeited before the expiration of 13 months from their delivery, the facts would entitle the representatives of the insured to a decree reforming the policies to correspond with the contract as made between the agent and the insured.

Bill to reform five policies of insurance, issued upon the life of Frank E. McMaster.

F. E. Gill, for complainant.
Park & Odell and Swan, Lawrence & Swan, for defendant.

SHIRAS, District Judge. From the evidence submitted in this case it appears that the New York Life Insurance Company, whose home office is in the city of New York, in the year 1893 was engaged in the business of life insurance at Sioux City, Iowa; that in the month of December, 1893, five contracts of insurance were entered

into between the company and one Frank E. McMaster, then a resident of Sioux City; that the conditions attached to and forming part of the policies the company was then issuing contained, among other provisions, the following:

"All premiums are due and payable at the home office of the company, unless otherwise agreed in writing, but may be paid to agents producing receipts signed by the president, vice president, second vice president, actuary, or secretary, and countersigned by such agents. If any premium is not thus paid on or before the day when due, then (except as hereinafter otherwise provided) this policy shall become void, and all payments previously made shall remain the property of the company."

"After this policy shall have been in force three months, a grace of one month shall be allowed in payment of subsequent premiums, subject to an interest charge of five per cent. per annum for the number of days during which the premium remains due and unpaid. During said month of grace, the unpaid premium, with interest, as above, remains an indebtedness due the company, and, in the event of the death during the said month, this indebtedness will be deducted from the amount of the insurance."

It further appears that in December, 1893, one F. W. Smith was engaged in soliciting insurance on behalf of the defendant company at Sioux City, and was the person who secured the application for insurance from F. E. McMaster; and in his testimony he says that, when soliciting the insurance, he called McMaster's attention to the 30 days' grace that was allowed in payment of premiums, and further stated to him that the payment of the premium on the delivery of the policy would carry his insurance over a period of 13 months; and this witness further testified that when McMasters signed the application which was filled out by the witness nothing was said therein about the date of the policy, but that subsequently the witness, without the knowledge of the applicant, inserted therein the words, "Please date policy same as application"; that this was done because the company was paying an extra bonus of seven dollars per thousand for all insurance obtained in the year 1893, and it was desirable to have the policy bear date of that year, in order to secure the bonus to the agent obtaining the insurance. The application bears date December 12, 1893, but the policies, when issued, were dated December 18, 1893, and each reads as follows:

"The New York Life Insurance Company, by this policy of insurance, doth promise and agree to pay one thousand dollars at its office in the city of New York to the insured's executors, administrators, or assigns, immediately upon receipt and approval of proofs of death, during the continuance of this policy, of Frank E. McMaster, of Sioux City, in the county of Woodbury, state of Iowa (herein called the 'insured'). This contract is made in consideration of the written application for this policy, and of the agreements, statements, and warranties thereof, which are hereby made a part of this contract, and in further consideration of the sum of twenty-one dollars and ——— cents, to be paid in advance, and of the payment of a like sum on the twelfth day of December in every year thereafter during the continuance of this policy. * * * The benefits and provisions placed by the company on the next page are part of this contract, as fully as if recited over the signature thereto affixed."

The provisions thus referred to contain, among others, those already set forth at length. It further appears that the first year's premium of $21 on each of the five policies was paid by the insured on the 26th day of December, 1893, and the policies were then delivered to him. It also appears that no further payments of premiums

were made; that Frank E. McMaster died at Sioux City on the 18th day of January, 1895; that the present complainant was duly appointed administrator of his estate; that, upon demand made, the defendant company refused to pay the amount called for by the policies, upon the ground that the policies had lapsed for nonpayment of the second premiums thereon; that thereupon the administrator brought an action at law in this court upon the policies, which is still pending, and afterwards filed the present bill to procure a reformation of the policies, by changing the date of payment of the second and subsequent premiums from December 12th to December 18th, on the ground that the date named in the policies, to wit, December 12th, is an error, and does not correctly represent the actual contract existing between the parties. The action of complainant in filing the present bill was doubtless brought about by the intimation given by the court when the law action was before the court upon demurrer,— that in that action the date of the payment of the second premiums must be held to be in fact that named in the policies, and that, no matter what the facts were, a court of law must construe the contract of insurance as it was written, and that, if it did not correctly represent the contract of the parties, resort must be had to a court of equity for the reformation thereof.

The questions presented upon the record have been very fully and ably argued by counsel, and, with the assistance thus afforded, I have examined the contract of insurance, and have reached the conclusion that the right of recovery is not dependent upon the date when the second year's premiums are made payable by the terms of the policies. In determining the true construction of the contract between the company and the insured, regard must be had to all of its provisions, and furthermore, if there is uncertainty and ambiguity with regard to some of the provisions of the contract, resulting from the language used in different clauses thereof, that construction most favorable to the insured must be adopted, upon the familiar principle that, as it is the company that prepares the contract, the insured not being consulted with regard to the form thereof, all doubts in regard to its meaning must be solved against the company. National Bank v. Insurance Co., 95 U. S. 673; Grace v. Insurance Co., 109 U. S. 278, 3 Sup. Ct. 207; Moulor v. Insurance Co., 111 U. S. 335, 4 Sup. Ct. 466. The contract is not one which, by its express terms, is to terminate at a given or named date. It is provided, in the conditions annexed to the policy proper, that if the insured should be living on the 12th day of December, 1913,—that is, 20 years after the date of the policy,—and should have made due payment of the premiums, then the insured could convert the policy into cash, or into a paid-up policy, or into an annuity. Until this date, however, should be reached, the continuance of the policy is made dependent upon two contingencies, to wit, the continuance of the life of the insured, and the payment of the premiums called for by the terms of the policy. When the first year's premiums were paid, and the policies were delivered to the insured, they constituted contracts for the life of the insured, subject to be forfeited by nonpayment of premiums according to the terms of the policies, or, after the lapse of 20 years, to be

converted as already stated. Thus, in Insurance Co. v. Statham, 93 U. S. 24, it is said:

"We agree with the court below, that the contract is not an assurance for a single year, with the privilege of renewal from year to year by paying the annual premium, but that it is an entire contract of assurance for life, subject to discontinuance and forfeiture for nonpayment of any of the stipulated premiums."

In construing the contract of the parties and their acts in connection therewith, the rule is to avoid forfeiture when it may be fairly done. Thus, in Insurance Co. v. Norton, 96 U. S. 234, it is ruled by the supreme court that:

"Forfeitures are not favored in the law. They are often the means of great oppressions and injustice. And, where adequate compensation can be made, the law in many cases, and equity in all cases, discharges the forfeiture, upon such compensation being made. It is true, we held in the Statham Case, 93 U. S. 24, that, in life insurance, time of payment is material, and cannot be extended by the courts against the assent of the company. But where such assent is given, the courts should be liberal in construing the contract in favor of avoiding a forfeiture."

In Insurance Co. v. Eggleston, 96 U. S. 572, it is declared:

"Courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so on which the party has relied and acted. Any agreement, declaration, or course of action on the part of an insurance company, which leads a party insured honestly to believe that, by conforming thereto, a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract."

In Thompson v. Insurance Co., 104 U. S. 252, it is said:

"We do not accept the position that the payment of the annual premium is a condition precedent to the continuance of the policy. That is untrue. It is a condition subsequent only, the nonperformance of which may incur a forfeiture of the policy or may not, according to the circumstances. It is always open for the assured to show a waiver of the condition, or a course of conduct on the part of the insurer which gave him just and reasonable ground to infer that a forfeiture would not be exacted."

To the same effect are the rulings in Insurance Co. v. Doster, 106 U. S. 30, 1 Sup. Ct. 18, and Insurance Co. v. Unsell, 144 U. S. 439, 12 Sup. Ct. 671.

Bearing these principles in mind, let us now consider what the contract was which the parties entered into, and whether the same was in force at the date of McMaster's death. In the application signed by McMaster it is stated that the sum to be insured was $5,000, the premium to be payable annually on the ordinary life table. As already stated, when the solicitor for the company was seeking to induce McMaster to apply for the insurance, he called his attention to the clause in the provisions annexed to the policies issued by the company, wherein it is provided that after a policy has been in force three months, then a month's grace is allowed in the payment of the next premium, and thus, when the first annual payment is made in full, the assured is protected for the period of 13 months. There can be no question, therefore, that when McMaster signed the application for the insurance in question he understood that, if he paid the first annual premium in full, the policies that he would receive would continue in force for the period of 13 months from their

date; that is, that the same could not be forfeited by a failure to pay a premium within that time. The testimony of Smith, the solicitor of the company, further shows that the understanding had with Mc-Master when the application was signed was that the first annual premiums were to be paid in full when the policies were delivered, and, in fact, the first premiums were so paid. Therefore, when Mc-Master signed the application, his understanding of the proposed contracts of insurance, which he contemplated securing, was that the first annual premiums were to be paid in full when the policies were delivered, and that these payments, when made, would secure him against a forfeiture on part of the company for a period of 13 months. The provision in the policy is that, "during the said month of grace, the unpaid premium, with interest as above, remains an indebtedness due the company, and, in the event of death during said month, this indebtedness will be deducted from the amount of the insurance." This clause clearly points to a month of grace not covered by the premium already paid, and fully justified McMaster in the assumption that, if he paid the first annual payment in full, he would be entitled to one year's protection, and also to one month of grace to be added thereto, or, in other words, to a period of 13 months, during which the policies could not be declared forfeited by the company. If there exists some question touching the meaning to be given to this clause, it must be solved against the company; and, furthermore, the evidence shows that the company, through its soliciting agent, construed the clause in question to mean that the payment of the first annual payment would protect the insured against a forfeiture for the period of 13 months, and used that construction as an inducement to secure the insurance from McMaster, and the company ought not to be permitted to now construe the clause in the policy in a manner different from that which it relied upon when soliciting the insurance.

The evidence in the case shows that the insurance was solicited, the application was signed, the first annual payments were paid, and the policies were delivered, at Sioux City, Iowa, the place of residence of the insured, and therefore the relation of the solicitor, Smith, to the parties, is controlled by the statute of Iowa upon that subject. Assurance Soc. v. Clements, 140 U. S. 226, 11 Sup. Ct. 822; Indemnity Co. v. Berry, 1 C. C. A. 561, 50 Fed. 511. By the Acts of the 18th General Assembly of the State of Iowa (chapter 211, p. 209) it is declared that "any person who shall hereafter solicit insurance or procure applications therefor, shall be held to be the soliciting agent of the insurance company or association issuing a policy on such application, or on a renewal thereof, anything in the application or policy to the contrary notwithstanding." In Cook v. Association, 74 Iowa, 746, 35 N. W. 500, the supreme court ruled that the above section applied to all kinds of insurance companies, including those engaged in life insurance. Therefore, when the solicitor, Smith, represented to McMaster that by paying one annual payment on the policies about to be issued he would secure a period of 13 months during which the policies could not be forfeited, by reason of the clause in the policies giving a full month of grace, Smith, as agent of

the company, put a construction upon the clause which is now binding upon the company. The facts of this case bring it fully within the ruling of the supreme court of the United States in Insurance Co. v. Chamberlain, 132 U. S. 304, 10 Sup. Ct. 87. In that case it appeared that the application required the applicant to state whether he had any other insurance on his life. The fact was, he was a member of various co-operative associations, and by reason thereof he had insurance on his life to the amount of $12,000. The applicant stated the facts fairly to the soliciting agent of the company, who took the view that co-operative insurance of the kind held by the applicant was not insurance within the meaning of the question in the application, and therefore wrote "No" as the proper answer to the question. The supreme court held that, under the statute of Iowa, the solicitor was agent of the company, and that the company was estopped from claiming that the insurance held by the applicant in co-operative companies was in fact insurance within the meaning of the application, or, in other words, held that the interpretation put upon the question by the soliciting agent when the insurance was applied for bound the company when suit was brought to recover upon the policy. Therefore, it is made clearly to appear that McMaster was induced to apply for and take the insurance upon his life in the defendant company upon the understanding that, if he paid the first annual premiums upon each policy, he would secure contracts of insurance which could not be forfeited within a period of 13 months. The first annual premiums were paid, the policies, bearing date December 18, 1893, were delivered, and the insured died within 13 months from the date of the policies; and the company refuses payment and denies liability on the ground that the second year's premiums had not been paid at the date fixed in the policy or within a month thereafter, and therefore the policies have been forfeited. The date fixed in the policies for the payment of the second and subsequent premiums is the 12th day of December, and it thus appears that the second premiums were made payable in advance of the termination of the first year for which the premiums were paid when the policies were delivered. If the theory contended for on behalf of the company is correct, it follows that by the device of making the second and subsequent payments due on the 12th day of December, instead of the 18th, the date of the policies, the insured and his estate are deprived of the benefit of the month's grace which McMaster was assured he would be entitled to, when he applied for the insurance. Furthermore, if this construction of the policy is sustained, it makes it possible for the company, after using the month's grace as an argument to secure insurance, then to escape the obligation by the simple device of so writing the policies as to make the second payments come due a month in advance of the date of the policies. The argument on behalf of the company is that there was nothing said in the application with regard to the date of the second and subsequent payments, and therefore the company had the right to fix the date, and the insured, by receiving the policies without objection, and paying the first premium, agreed to the date named in the policies, and is bound thereby.

Assuming that at law the parties are bound by the date thus fixed for the second payment of the premiums, the question still remains whether, from the fact that the second and subsequent premiums are made payable on the 12th of December, it necessarily follows that the policies could be declared forfeited by the company until after the expiration of the 13 months from the date thereof. At law, the question would seem to turn upon the proposition whether McMaster, by paying the first annual premium in full, became entitled to a contract of insurance which could not be forfeited until after the expiration of 13 months, because, if that was the contract, then the court would be justified in so construing the clause with regard to the forfeiture for nonpayment of subsequent premiums as to hold that the same did not become applicable and in force until after the expiration of the 13 months period. There can be no question, under the facts of this case, that when McMaster signed the application for the insurance he understood, and the company, then represented by its soliciting agent, understood, that, if the officers of the company at the home office accepted the risk, by paying one year's premium in full McMaster would secure contracts of insurance which could not be forfeited until after the expiration of 13 months. The company accepted the risk, and issued policies for the required amount, dating the same December 18th; and the defendant, in its answer, avers "that on or about the 25th day of December, 1893, the said policies were delivered to the said Frank E. McMaster, who received the same, and paid the first year's premiums thereon." If the policies had not antedated the time for the payment of the second and subsequent premiums, making the same payable in advance, there would be no question of the liability of the company, because, it being admitted that the first year's premiums were paid in full, then the insured became entitled to a month's grace; and the insured died within the month of grace, thus entitling the company to deduct from the face of the policy the amount of the second premium, with interest thereon. When the policies were delivered to McMaster upon payment of the first year's premiums, there were then created valid contracts of insurance upon the life of McMaster, not for one year, but continuing contracts extending over the life of the insured, which could not be forfeited for nonpayment of premiums, so as to deprive the insured of the protection thereof during any period of time covered by the payments already made. Therefore, at law, the question is, for what period of time were the policies rendered nonforfeitable by the payment of the first year's premiums? It is admitted that the contracts of insurance did not take effect until December 26, 1893, when the first year's premiums were paid, and the policies were delivered to the insured. If these policies did not contain the clause allowing one month's grace, the payment of the premiums would certainly have prevented a forfeiture for one year from December 26, 1893. Unless a period of a month be added thereto, the insured is deprived of the benefit of the period of grace which was promised him. If this period is allowed, then the policies were in force at the date of Mc-

Master's death.    Upon what theory or principle can the insured be rightfully deprived of the benefit of this period?

It cannot be questioned that if the company had followed the usual rule, and had made the time for the payment of the second and subsequent premiums to count from the date of the policies, there would be no doubt of the liability of the company.    The policies are dated December 18, 1893.    If the second and subsequent premiums had been made payable on December 18th in 1894 and subsequent years, then the month's grace would date from December 18th, and the policies would not be forfeited until after January 18th following.    The defense of the company is rested on the fact that it made the second and subsequent premiums payable on December 12th in 1894 and subsequent years.    It is not claimed that this date was agreed upon between McMaster and the company.    There is no evidence showing that, when the policies were delivered, his attention was called to this date, or that he in fact knew that December 12th had been named in the policies as the time for the payment of the subsequent premiums.    In the answer filed by defendant it is expressly averred that "no directions were ever given or request made by the deceased, or any agreement made, that the premium should be made payable on any specified date."    The evidence justifies the conclusion that the defendant company agreed with McMaster to insure his life, and to issue to him contracts of insurance to take effect when the first year's premiums thereon were paid, and to be nonforfeitable for a period of 13 months; that the company issued policies for the amounts agreed upon, and delivered the same on December 26, 1893, receiving, at that time, payment of one year's premiums in full, and thereby became bound to pay the agreed sums, provided McMaster died while the policies were in force; that by the terms of the contract of insurance the policies could not be forfeited until 13 months had elapsed; that, it being admitted by the defendant that there was no agreement between McMaster and the company with regard to the time when the second and subsequent premiums should become payable, the company could not, by its own act in antedating the time of payment of the subsequent premiums, deprive McMaster of the protection of the contracts of insurance during the period of 13 months from the date of the first payment.    If it be true that the payment of the first year's premiums made the policies nonforfeitable for a period of 13 months, then at law the court is justified in holding that the forfeiture claimed by reason of the nonpayment of the second premiums could not be availed of by defendant until the period of 13 months had elapsed, and would not be a defense to a claim based upon the death of McMaster within the period of 13 months from the taking effect of the contracts of insurance.    If, however, it should be held at law that the policies are so worded that they can be declared forfeited because the second premiums had not been paid on the 12th day of December, 1894, or within a month thereafter, then it is clear that the policies should be reformed so as to correspond to the real contract of the parties.    As already stated, the evidence shows that it

was the agreement of the parties that the policies were to take effect upon delivery, and that they were not to be delivered until the premiums were paid; and it also clearly appears from the evidence that McMaster expected to receive, and the company contracted to deliver, policies which would be nonforfeitable for a period of 13 months; and it now appears that the company, although it admits that there never was any agreement authorizing it to antedate the time for the payment of the second premium, of its own motion did so antedate the time for such payment, and claims that by so doing it has deprived McMaster of protection during the full period of 13 months, during which period it had previously agreed the policies should be in full force and nonforfeitable. Although, as herein indicated, the proper legal construction of the policies shows that they were in force when McMaster died, yet as the defendant company is insisting that the policies, as written, had then been forfeited by reason of the fact that the second premiums had been made payable on the 12th of December, it being admitted that this was done without the consent of the insured, and as it is clear that it was not the contract of the parties that the 13-months nonforfeitable period should begin to run on the 12th of December, 1894, there is ground upon which the complainant can rest in asking a decree of reformation, and such decree will therefore be granted in favor of complainant†