MARY C. KEATLEY vs. THE GRAND FRATERNITY.

1. INSURANCE—FRATERNAL INSURANCE—APPLICATION—QUESTIONS—CONSTRUCTION—"PRACTICE."

A question asked an applicant for fraternal insurance, "What is your daily practice in regard to the use of  *  *  *  liquors?" calls for information as to whether the applicant has a liquor habit to the extent of being a daily habit, and where he has no such habit, an answer to that effect is truthful, though at times he drank to excess; the word "practice", when used in connection with the word "daily," suggesting the idea of doing a thing regularly, and signifying a habit or regular conduct.

Syllabus.

2. INSURANCE—FRATERNAL INSURANCE—APPLICATION—QUESTIONS—CON-
STRUCTION.

A question asked an applicant for fraternal insurance, "What has been your practice in the past?" immediately following the question, "What has been your daily practice regarding the use of   *   *   *   liquors?" is susceptible of referring to the daily practice in the use of liquors, and is also susceptible of calling for the manner and extent of the use of liquors; and where the answer is responsive to the question construed as referring to the daily practice, and is truthful when so construed, insurer cannot urge that the answer is not true when the question is construed as calling for the manner and extent of the use of liquors.

3. INSURANCE—FRATERNAL INSURANCE—QUESTIONS—APPLICATION—CON-
STRUCTION.

Where a question in an application for fraternal insurance, framed by insurer, is ambiguous, and thus permits an applicant to make responsive answers in different ways, the question must be construed most strongly against insurer.

4. PLEADING — REPLICATION — DUPLICITY — ARGUMENTATIVENESS — CON-
CLUSIONS.

Where, in an action on a certificate issued by a Pennsylvania fraternal insurance order, the order averred that the answers that the member had not consulted a physician since childhood, and that he had not been subjected to enumerated diseases, and that his weight had not recently increased or diminished, were false, a replication justifying under *Act Pa.* June 23, 1885 (*P. L.* 134), providing that no misrepresentation in an application made in good faith shall effect a forfeiture, unless the misrepresentation relates to a matter material to the risk, and reciting that at the time of making the application the member had not consulted a physician for any serious disease, that he had not had any serious disease which affected his general health, and that there had been no material change in his weight, indicating an impairment of health, was good as against the objection that it was argumentative and double and contained conclusions of law.

5. INSURANCE—FRATERNAL INSURANCE—MISREPRESENTATIONS IN APPLI-
CATION.

*Act Pa.* June 23, 1885 (*P. L.* 134), providing that no misrepresentation in an application made in good faith shall effect a forfeiture, unless the misrepresentation relates to a matter material to the risk, changes the general rule when the misrepresentations relate to matters not material to the risk; but what constitutes misrepresentations, and what are matters material to the risk, can be ascertained only from evidence given on the trial.

(*January* 31, 1911.)

Judges CONRAD and WOOLLEY sitting.

*John Biggs* and *Armon D. Chaytor, Jr.,* for plaintiff.

*Leonard E. Wales* for defendant.

Superior Court, New Castle County, January Term, 1911.

ACTION (No. 45, May Term, 1910) by Mary C. Keatley against The Grand Fraternity.

Demurrers to certain pleas and replications. Demurrers to pleas sustained, and to replications overruled.

(See report of trial, *post* 511, and writ of error to Supreme Court, 3 *Boyce*——).

The case is stated in the opinion.

WOOLLEY, J., delivering the opinion of the court:

From the pleadings in this case it appears that the defendant is a fraternal insurance organization incorporated under the laws of the state of Pennsylvania, that William J. Keatley, the husband of the plaintiff, applied to it for membership, and after answering the interrogatories contained in his application and passing the required physical examination, was admitted as a member, entitled to the death and disability benefits provided by its rules and by-laws, for the recovery of which the plaintiff as the beneficiary named in the certificate has instituted this action.

The defendant resists this action upon the ground, among others, that the membership of the plaintiff's husband was secured by misstatements and fraudulent misrepresentations made by him in answer to certain questions contained in his application, and as a consequence the instrument sued upon is void.

By its fifth and tenth pleas the defendant claims in varying language that the plaintiff's husband subscribed to a provision in the application as well as to a by-law to the same effect, that if in his written application there was any misstatement or evasion or concealment of fact, the insured as well as his beneficiary should forfeit all rights to benefits from the fraternity and that the benefit or membership certificate would be void. By its pleas it is further averred that the plaintiff's husband made certain misstatements and concealments of fact in answering the questions as follows:

"What has been your daily practice in regard to the use of wines, spirits and malt liquors?" To this question, the applicant answered, "None."

"What has been your practice in the past?" To this question the applicant likewise answered, "None."

The pleas conclude by averring that in truth the applicant at the time he made the answers and for a long time theretofore,

had been "addicted to the use of wines, spirits and malt liquors, and indulged in such practice at frequent and regular intervals." To these pleas the plaintiff filed general demurrers.

In considering whether fraud may be charged to the deceased in making his answers, it must be remembered that the questions propounded to him were framed by the defendant, and it must be determined whether they were so framed as to permit the deceased to make his answers truthfully, notwithstanding the admission by the demurrers that he was addicted to the use of liquor to the extent stated in the pleas.

The first question is "What has been your daily practice in regard to the use of wines, spirits and malt liquors?" The word "practice" suggests the idea of doing a thing customarily or regularly. It somewhat signifies a habit or regular conduct, the extent or scope of which is clearly defined in the question by the word "daily", thereby showing that the matter inquired about was whether the applicant had a liquor habit that was fixed to the extent of being a daily habit. The plain purport of the question was to elicit an answer that would enter into the consideration of the risk. If he had no such habit and so averred, the answer of the applicant would have been truthful and free from fraud, even if at times he drank to excess.

Immediately following this question is another, namely, "What has been your practice in the past?" In view of the juxtaposition of these questions it would be natural for any one to infer. that the word "practice" likewise was intended to refer to the practice of using intoxicating liquors, although the sentence is so framed as to leave that wholly to inference. If this be the purport of the question, and, indeed, that is the construction placed upon it by the defendant itself, might it not have been equally natural for the applicant likewise to have inferred that the practice referred to in the second question was the "daily practice" inquired about in the question just answered? If the word "practice" has the same meaning in each question, and there is nothing to distinguish its meaning in the second question from its clear meaning in the first, then indeed the meanings may be interpreted to be the same, and the second question is then susceptible of a truthful answer

that he had no daily practice in the past, although in the past the applicant, in some other manner, might have abused the use of intoxicants.

The defendant, however, contends that the intent of the second question was to obtain from the applicant a statement of the manner and extent in which in any way he had used intoxicating liquors in the past.   If this contention be sound, then the question is susceptible of two constructions, and the defendant is in no better position than if it were susceptible only of the former construction.

Having framed the question with an ambiguity that permitted the applicant to make responsive answers in different ways, then the question is to be subjected to the same construction as a covenant that is ambiguous, with respect to which our courts have long held that "if there be any ambiguity, then such construction shall be made as is most strong against the covenantor, for he might have expressed himself more clearly." *Randel v. Canal Co.*, 1 *Harr.* 151, 174; *Houston v. Spruance*, 4 *Harr.* 117, 125.

In the case of *National Bank v. Insurance Co.*, 95 *U. S.* 673, 678, 24 *L. Ed.* 563, Mr. Justice Harlan states the principle upon which such questions of construction should be decided.   He said, "Two constructions of the contract may be suggested.   *   *   * But, without adopting either of these constructions, we rest the conclusion already indicated upon the broad ground that when a policy of insurance contains contradictory provisions, or has been so framed as to leave room for construction, rendering it doubtful whether the parties intended the exact truth of the applicant's statements to be a condition precedent to any binding contract, the court should lean against that construction which imposes upon the assured the obligations of a warranty.   The company cannot justly complain of such a rule.   Its attorneys, officers or agents prepared the policy for the purpose, we shall assume, both of protecting the company against fraud, and of securing the just rights of the assured under a valid contract of insurance.   It is its language which the court is invited to interpret, and it is both reasonable and just that its own words should be construed most strongly against itself."

We are of opinion that the question as framed is susceptible

of two meanings and of different answers, and as the applicant made a responsive answer to the question within one of its meanings, the defendant cannot defend upon the ground that the answer was untrue within the other meaning. The demurrers to the fifth and tenth pleas are therefore sustained.

The defendant has filed special demurrers to six of the plaintiff's replications, the replications are in reply to as many different pleas and the pleas are in answer to two of the counts of the declaration. In an effort to bring order out of this confusion of pleading, the questions raised will be grouped and considered in three classes:

(a) The question in the first class is raised by the answer given by William J. Keatley to the question, "When and for what complaint did you last consult a physician?" The answer was, "Not since childhood. Mumps."

(b) The question in the second class is raised by the answer given to the question, "Have you ever been subject to, or had, or now have, any of the following disorders or diseases: * * * Piles, bladder, gravel or kidney diseases?" The answer was: "No."

(c) The question in the third class is raised by the answer given to the question, "Has your weight recently increased or diminished? If so, why?" The answer was, "No."

In all six of the replications, the plaintiff recites and seeks to justify under the Act of June 23, 1885, *Laws of Pennsylvania* (*P. L.* 134), which provides that:

"No misrepresentation or untrue statement in such application, made in good faith by the applicant, shall effect a forfeiture or be a ground of defense in any suit brought upon any policy of insurance issued upon the faith of such application, unless such misrepresentation or untrue statement relates to some matter material to the risk."

In addition to reciting the act referred to, the replications in class (a) further aver, "That at the time of making said application, the said William J. Keatley had not consulted a physician for any serious disease, illness or ailment, or for any disease, illness or ailment that was other than merely trivial and temporary

in its nature, and which did not affect his general health, or the disclosure of which was material to the risk of insuring his life, and the answers which he made, were in good faith and without intention to mislead or deceive; without this, that" etc.

The replications in class (b) in addition to reciting the act of 1885, further aver, "That at the time of making said application, the said William J. Keatley had not, nor had he any serious disease, illness or ailment, or any disease, illness or ailment that was other than trivial and temporary in its nature, and which did not affect his general health or the disclosure of which was material to the risk of insuring his life, and the answers which he made, were in good faith and without intention to mislead or deceive, without this, that" etc.

The replications in class (c) in addition to reciting the act of 1885, further aver, "That at the time of making the said application, the said William J. Keatley had been and was in good health, and his weight was that which it normally was at that time of the year, and there was and had been no material or marked change in his weight and no change in his weight which indicated an impairment of his health, and no change in his weight that was material to the risk of insuring his life, and the answers which he made, were in good faith and without intention to mislead and deceive, without this, that" etc.

With respect to all of these several replications, the defendant contends that they are argumentative and double and contain conclusions of law.

In support of its contention the defendant chiefly relies upon the case of *Murphy v. Insurance Co.*, 205 *Pa. St.* 444, 55 *Atl.* 19, in which the court gave an interpretation to the statute recited and relied upon by the plaintiff. This interpretation is that "the act of 1885 had no application in cases where the answer was false and related to some matter material to the risk. Where it was doubtful whether the matter was material, the question of materiality must be submitted to the jury," the effect of which is not to change the law of warranty with respect to misrepresentations that affect the risk but to change the general rule only when the misrepresentations relate to matters not material to the risk.

18

Opinion.

What constitute misrepresentations and what are matters material to the risk can be ascertained only from evidence given upon trial.

The plaintiff, by the species of pleading known as a special traverse, has pleaded so as to take her case without the general rule of warranty and to bring it within the rule of the Pennsylvania statute and within the law of the decisions relating to non-serious ailments and immaterial misstatements. Resort to the subtlety of an *absque hoc* is not novel in our pleading (*Beatty v. Parsons, ante* 134, *78 Atl.* 302) and we know of no better use to which it could be put than in this case, where the plaintiff by her replications could neither directly traverse nor confess and avoid the matter contained in the pleas, and where nevertheless, she was entitled to invoke this statute, and bring her case within the law of its exception.

In the replications demurred to, we found no duplicity, and no more argumentativeness, or qualification than is allowed by the rules of pleading in the inducement to an *absque hoc*. *Stephen, Pl.* 183–199.

The demurrers to the second, fourth, sixth, ninth, eleventh and thirteenth replications are overruled.