PACIFIC CREOSOTING CO. v. THAMES & MERSEY MARINE INS.
CO., Limited.

(District Court, W. D. Washington, N. D. January, 1914.)

No. 4354.

1. INSURANCE (§ 478*)—MARINE INSURANCE—CONSTRUCTION OF POLICY—WARRANTY AGAINST PARTICULAR AVERAGE—"ON FIRE"—"BURNED."

A clause in a marine policy on cargo, "warranted free from particular average unless the vessel or craft or the interest insured be stranded, sunk or on fire," is not to be construed as equivalent to the older form in which the word "burned" was used instead of "on fire," and, in the light of the rule that such contracts are to be construed most favorably to the insured if some structural part of the vessel was actually on fire, it is sufficient to open the warranty clause.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1230–1238; Dec. Dig. § 478.*]

2. INSURANCE (§ 415*)—ACTION ON MARINE POLICY—DEFENSES.

To an action on a marine policy on cargo which covered "the risk of craft and/or raft to and from the vessel," it is not a defense that a lighter employed to land the cargo, on which a loss occurred, was not seaworthy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1111; Dec. Dig. § 415.*]

3. INSURANCE (§ 402*)—RISKS AND CAUSE OF LOSS—MARINE POLICY.

There is no implied warranty in a policy on cargo that the goods are seaworthy for the voyage, and, where the vessel was seaworthy when the voyage commenced and the cargo was in good condition when received, the insurer is liable for a loss during the voyage from external causes.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1088–1090, 1093, 1103–1105; Dec. Dig. § 402.*]

In Admiralty. Suit by the Pacific Creosoting Company against the Thames & Mersey Marine Insurance Company, Limited. Decree for libelant.

See, also, 184 Fed. 947.

Bogle, Graves, Merritt & Bogle, of Seattle, Wash., for libelant.
Brady & Rummens, of Seattle, Wash., for claimant.

NETERER, District Judge. This action is founded on a marine policy insuring a cargo, 2,753 drums of creosote oil in the British ship "Sardhana," shipped from London, England, to Eagle Harbor in Puget Sound, Wash., "including the risk of craft, and/or raft to and from the vessel." There is also incorporated in the policy by attaching to the margin a printed slip, which is not a part of the printed form, the following:

"Warranted free from particular average, unless the vessel or craft or the interest insured be stranded, sunk or on fire. * * *"

General average and salvage charges payable according to foreign statement or York-Antwerp rules, or 1890 rules, if in accordance with the contract of affreightment. Including all risks of craft and boats, "including all risks of transshipment and of craft, lighterage and/or

any other conveyances · * *· * from the vessel until safely delivered in the warehouse. * * * " In the body of the printed form of the policy:

"It is declared and agreed that Corn Fish Salt and Fruit Flour and Seed are warranted free from average unless general or the ship be stranded sunk or burnt."

It is alleged that by reason of storms encountered on the voyage the cargo was battered and damage resulted by loss of creosote oil, and after arriving at the port of discharge a gale caused the barge used for lightering the cargo to capsize, and thereby four drums were lost and a large salvage expense incurred. On November 18th, a fire broke out in the after 'tween decks of the ship while lying in the port of Oak Harbor, behind the bulkhead forward of the lazarette. The following was entered in the log of the ship, and is sustained by the evidence:

"November 18th. Stevedores continued to discharge the cargo and at 5 p. m. finished for the day. 291 further drums were discharged. About 9 :30 p. m. smoke was discovered issuing from the after hatch, by one of the crew, who immediately notified the master and then gave the alarm. This alarm was responded to by the crews of the ship Jupiter, the S. S. Hornelen, and the employés of the Pacific Creosoting Company, who brought with them several chemical fire extinguishers. The master went below through the lazarette and saw the reflection of the fire over the top of the bulkhead between the after 'tween decks and the lazarette. The after 'tween decks were still full of cargo. After considerable trouble the fire was extinguished, and it was then discovered that the aforesaid bulkhead, together with the door thereof (the bulkhead was built in the vessel), and the dunnage in the after 'tween decks, were burned, and some of the ship's stores in the lazarette were damaged by water and chemicals. The origin of the fire was not discovered."

[1] The respondent claims exemption from liability on account of the "free from particular average" warranty; that the "Sardhana" was not "on fire"; that no recovery for the four drums lost on the lighter or for the salvage expenses can be had, because the lighter in question was unseaworthy; that no recovery can be had in any event, it not being shown that any creosote was lost; and that, if lost, it was not on the ship at the time of the fire, and the "F. P. A." clause does not apply; and that it is not shown what loss occurred because of perils insured against.

It is strenuously urged that the fire was not sufficient to delete the "F. P. A." warranty, and reliance is placed on the Glenlivet, Prob. p. 48, decided in 1893, and cited by the Supreme Court of the United States in London Insurance v. Companhia, etc., 167 U. S. 149, 156, 17 Sup. Ct. 785, 42 L. Ed. 113. In the form of policy previous to the Glenlivet·Case, the word "burned" was used in the "F. P. A." clause. After this case was decided the words "on fire" were substituted for the word "burned." No case has been suggested where the words "on fire" have ever been before the courts in the same relation in any other case. The change of the words must have been made for a purpose. These words, as stated by Judge Hanford in passing upon the exceptions to the libel in this case in (D. C.) 184 Fed. 949, are not synonymous. The policy sued on in the body thereof with relation to "corn," etc., uses the terms sunk or "burned" and in the margin with

relation to the cargo especially provides sunk or "on fire," clearly evidencing a purpose in the minds of the parties to distinguish from the former term and construction. The testimony of Mr. Beckett, an average adjuster of London, England, shows that, "under clauses * * * containing the words 'on fire,' it is the practice of the adjusters in England to consider the warranty open if some structural part of the vessel has been actually on fire." It is clear that "on fire" used in the policy was not to be considered as was "burned" in the Glenlivet Case. The warranty is drawn in the nature of an exception to the liability of the insurer and is strictly construed against him. Judge Morrow, Circuit Judge, in Canton Ins. Offices v. Woodside, 90 Fed. 301, 305, 33 C. C. A. 63, 68, said:

"In the case at bar the intention of the parties is not expressed as clearly as it might be, and hence any doubt that there may be is to be resolved in favor of the insured and against the insurer. A policy of insurance is a contract of indemnity, and is to be liberally construed in favor of the insured. Yeaton v. Fry, 5 Cranch, 335 [3 L. Ed. 117]; National Bank v. Insurance Co., 95 U. S. 673, 679 [24 L. Ed. 563]; Steel v. Insurance Co., 2 C. C. A. 463, 51 Fed. 715, 723, and cases there cited; 1 Arn. Ins. (6th Ed.) § 295. If the policy will fairly admit of two constructions, that one should be adopted which will indemnify the insured."

"The company cannot justly complain of such a rule. Its attorneys, officers, or agents prepared the policy for the purpose, we shall assume, both of protecting the company against fraud, and of securing the just rights of the assured under a valid contract of insurance. It is its language which the court is invited to interpret, and it is both reasonable and just that its own words should be construed most strongly against itself." National Bank v. Insurance Co., 95 U. S. 673, 24 L. Ed. 563.

"If the company by the use of the expressions found in the policy leaves it a matter of doubt as to the true construction to be given to the language, the court should lean against the construction which would limit the liability of the company." London Assurance v. Companhia, etc., 167 U. S. 149, 17 Sup. Ct. 785, 42 L. Ed. 113.

The fire, as shown by the evidence, was on some structural part of the ship, and endangered the ship by actually burning some part of it, and this was sufficient to open the warranty clause.

[2] The contention that the lighter in question was unseaworthy cannot be sustained. The provisions of the policy include "the risk of craft and/or raft to and from the vessel."

"The warrant of seaworthiness which is implied as to the ship does not extend to lighters employed to land the cargo." Arnold on Marine Insurance (8th Ed.) § 689; 19 Am. & Eng. Encyc. of Law (2d Ed.) 1002; 25 Cyc. 645; Lane v. Nickerson, L. R. 1 C. P. 412.

The burden to show unseaworthiness, if that were material, is upon the respondents. Nome Beach, etc., v. Munich Assurance Co. (C. C.) 123 Fed. 820. There is no testimony before the court to establish such condition.

[3] The bill of lading or shipping receipt for the cargo recites:

"Shipped in good order and well-conditioned by Blagden, Waugh & Company, in and upon the good ship called the Sardhana * * * 2,753 drums of creosote oil."

The captain of the ship was asked:

"Was not all of the cargo in apparent good order and condition when received on said ship? Yes, I rejected what we considered bad drums."

The ship's log recites, and these facts are in evidence:

"Sept. 26. It was noticed that by the soundings in the pump well that there was an increase of liquid which appeared to be mostly creosote."

"Nov. 3. Similar conditions were encountered, and the cargo again worked badly."

The witness Wylie testified:

"The creosote escaped into the hold of the vessel partly on account of the severe weather and partly on account of the original weakness of the drums, and the leakage of creosote was to some extent due to the screw bungs working out."

On the arrival of the ship at its port of discharge, it was found that there had been lost during the voyage the difference between the cargo received and that delivered, which is claimed in the libel.

"There is no implied warranty in a policy on goods that the goods are seaworthy for the voyage." 2 Arnold on Marine Insurance (8th Ed.) § 689.

The ship "Sardhana" being seaworthy when she left London, the cargo in good order and condition when received on the ship, the damage to the drums being external, and it conclusively appearing that there was a loss of cargo, the libelant is entitled to recover his damage. The Peter der Grosse, L. R. 1 P. D. 414; Nome Beach, etc., v. Munich Insurance Co. (C. C.) 123 Fed. 827.

Under the terms of the policy, and the warranty being open by reason of the ship being "on fire," the respondents are liable for the total damage claimed. 26 Cyc. 682; London Assurance Co. v. Companhia, 167 U. S. 149, 17 Sup. Ct. 785, 42 L. Ed. 113; 1 Cyc. 884A; Thames & Mersey Marine Insurance Co. v. Pitts, 7 Aspinwall's Maritime Cases (N. S.) 302.

A decree may be entered accordingly.