**320**

**E. HUBSCHMAN & SONS, Inc.,**
**Libellant,**

v.

**THE BLACK CONDOR, THE BLACK TERN, their engines, boilers, etc., Black Diamond Steamship Corp. THE OIL EXPRESS. THE HERSTEIN.**

United States District Court,
S. D. New York.
April 6, 1955.

Bailey & Muller, New York City, for libellant.

Pyne, Lynch & Smith, New York City, for respondent Black Diamond Steamship Corp.

KNOX, Chief Judge.

In this suit, the proctors for the respective parties have stipulated that the facts involved are as follows:

"[1] A true and complete copy of the bill of lading referred to in the libel is annexed hereto, marked Exhibit A;

"[2] Under Black Diamond's said B/L, signed by Seegmuller, its agent, (Exhibit A), the shipment of skins referred to in the libel, was shipped by Seegmuller, at Basle, Switzerland, about July, 1951, on board the Rhine River barge 'Express 26', owned and operated by Neptune Line, for transportation to Antwerp, consigned to Seegmuller & Co., at Antwerp, to be there delivered to respondent Black Diamond's steamship 'Black Tern'. A true and complete copy of the bill of lading issued by Neptune Line for said shipment is attached hereto marked Exhibit B.

"[3] The said Neptune Line is an independent carrier operating barges on the Rhine River, and respondent Black Diamond had no interest in or control over said line or its barge 'Express 26'.

"[4] The said Neptune Line did not deliver the shipment to Seegmuller & Co., at Antwerp, but negligently caused such shipment to be miscarried to London.

"[5] The damage to the said shipment for which claim is made in the libel was solely caused by the negligence of Neptune Line as stat-

ed above and/or the negligence of the barge 'Express 26', en route to Antwerp.

"[6] The shipment referred to in the libel was later returned from London to Antwerp in a damaged condition, and from Antwerp was carried to Philadelphia on the steamships 'Black Condor' and 'Algonquin Victor', operated by respondent Black Diamond.

"[7] On delivery at Philadelphia to the order consignee named in the bill of lading, Exhibit A, [libellant herein], the said shipment was in a damaged condition as alleged on the libel."

Two shipping documents are attached to the above stipulation. One was issued by Seegmuller & Co. on July 21, 1951 (this bill of lading, which is in the German language, does not seem to be complete), and called for the carriage of the goods from Basle to Antwerp by motor ship "Express 26", a vessel operated by the Neptune Transport—und Schiffahrts A.G. The second was dated July 25, 1951 and bears the stamp of Seegmuller & Co.—A.G. for the master of the steamship "Black Tern". Apparently, Seegmuller & Co. was acting as agent for both the shipper, and for each of the carriers. Philadelphia, Pennsylvania was the port of destination. At the foot of the ocean bill of lading, in easily readable type, there was this inscription: "The Responsibility of Each Carrier is Limited to His Own Line." Antwerp was specified as the "Port of Loading".

Section 11 of the bill reads as follows:

"Whenever the carrier or master may deem it advisable—the carrier or master may without notice, forward the whole or any part of the goods before or after loading at the original port of shipment—by any vessel, vessels or other means of transportation by water or by land or by both such means, whether operated by the carrier or by others—this carrier, in making arrangements for any transshipping or forwarding vessel or means of transportation not operated by this carrier shall be considered solely the forwarding agent of the shipper and without any other responsibility whatsoever. The carriage by any transshipping or forwarding carrier—shall be subject to all the terms whatsoever in the regular form of Bill of Lading—used at the time by such carrier—".

A somewhat similar provision was before this Court in the case of The President Taft, 1938 A.M.C. 279, and was held to be valid.

As has been seen in the stipulation:

"The said Neptune Line is an independent carrier, operating barges on the Rhine River, and respondent Black Diamond had no interest in or control over said line or its barge 'Express 26'.

"The said Neptune Line did not deliver the shipment to Seegmuller & Co. at Antwerp, but negligently caused such shipment to be miscarried to London.

"The damage to the said shipment for which claim is made in the libel was solely caused by the negligence of Neptune Line as stated above and/or the negligence of the barge 'Express 26'."

It thus appears that the Black Diamond Steamship Company did not receive the goods before the "Black Tern" sailed from Antwerp, and that it did not contribute to the damage that came to the goods.

■ From the two shipping documents to which reference has been had it appears that respondent's bill of lading was not a *through* bill, and the shipper's agent was well aware of the fact.

■ While, as libellant asserts, the terms of a shipping document "should be construed most strongly against itself", National Bank v. Insurance Company, 95 U.S. 673–679, 24 L.Ed. 563, that rule, in my judgment, is not applicable to the facts of this suit.

Respondent's bill of lading clearly states that the goods "were to be transshipped in Antwerp on board the Black

Diamond Liner steamer below named, to be transported subject to all the terms of this bill of lading * * * ".

The shipper's agent, who arranged for the transportation of the goods from Basle to Philadelphia, knew or should have known that respondent's liability was confined to its own line, and did not extend the negligence of a connecting carrier. On the facts stipulated, the Black Diamond Steamship Corporation should be absolved from the responsibility for the damage that came to the goods.

If Seegmuller was not the agent of the shipper, as well as that of the steamship company, it is difficult to understand how Seegmuller & Company came into possession of the goods.

Libel dismissed.