McMASTER v. NEW YORK LIFE INS. CO.

(Circuit Court, N. D. Iowa, W. D.   November 7, 1898.)

1. LIFE INSURANCE—CONSTRUCTION OF POLICY—LENGTH OF TERM OF CONTRACT.
A policy of life insurance providing for the payment of annual premiums by the assured is not a contract for one year, with the privilege of renewal from year to year by the payment of the premiums, but a contract for the life of the assured, subject to forfeiture and termination for nonperformance of its conditions; and it is incumbent on the party pleading such forfeiture to clearly establish the defense.

2. SAME—INCONSISTENT PROVISIONS.
A policy of life insurance, wherein the assured has no voice in the selection of terms used, must be construed against the party who prepared it; and, if it contains provisions which are inconsistent or contradictory, force must be given to those which sustain, rather than to those which would forfeit, the contract.

3. SAME—INCORPORATING APPLICATION IN POLICY.
Where an insurance policy is expressly based upon the application, which is made a part thereof, the two instruments are to be construed together as one contract.

4. SAME—CONTRACT CONSTRUED.
An applicant for life insurance, as required, designated in the application the basis upon which the premiums should be computed, that they should be payable annually, and that the policy should not go into effect until the first premium was paid. The application was accepted, and a policy issued thereon, which expressly made the application a part thereof, and to which the application was attached. The policy was dated December 18, 1893, and was delivered, and the full premium for one year at the designated rate paid, on December 26th. It contained a provision,

however, that the subsequent annual premiums should become due and payable on the 12th of each December,—the date of the application; but such provision was not called to the attention of the assured, and he did not in fact read the policy, being told by the agent that it was in accordance with the application. The policy further provided that a grace of one month should be allowed in the payment of subsequent premiums by the payment of interest, and that during such month the premium and interest should be considered a debt due the company, and deducted from the amount of the policy in case of death. The assured died on the morning of January 18, 1895, not having paid any further premiums. *Held* that, admitting the force between the parties of a custom of the company to make the date of the first payment relate back to the date of the policy, the provision that further premiums should become payable on December 12th was inconsistent with the application, and of the further provision of the policy itself, that the payments should be annual, and could not be enforced; that, the assured having paid a full year's premium, a second payment was not due until December 18, 1894, and the month of grace had not expired, nor the policy become forfeitable, at the time of his death.

5. SAME—ACTION ON POLICY—STATEMENTS WRITTEN IN APPLICATION BY AGENT OF INSURER.

Under Code Iowa, § 1750, which makes the acts of a solicitor or other agent of an insurance company the acts of the company, and not of the applicant, a plaintiff in an action at law on a policy may show that words appearing in the application were written by the agent of the company after the application was signed by the assured, and without his knowledge or consent, for the benefit of the agent himself.

6. SAME—EFFECT OF REQUEST IN APPLICATION.

A clause in an application for life insurance requesting that the policy issued thereon shall be dated as of the date of the application, even if binding on the applicant, cannot be invoked by the company to support a provision inserted in the policy making the second annual premium payable one year from the date of the application, where the request was not complied with and the policy bears a later date.

7. SAME—ESTOPPEL OF ASSURED BY ACCEPTANCE OF POLICY.

The acceptance of a life insurance policy by an assured does not bind him, as an assent to provisions which conflict with the application, which is also made a part thereof, when his attention is not called to the variance, and he accepts the policy without reading, on the assurance of the agent of the company that it is in exact accordance with the application.

8. SAME—DEFENSES.

Where an assured was allowed by a life insurance policy a term of grace, after a premium became payable, within which payment might be made, and during which the policy was not forfeitable, and the assured dies within such term without having made the payment, it is immaterial to a right of recovery on the policy whether or not he intended to make the payment.[1]

By written stipulation duly signed and filed, the parties to this action waived a jury trial, and consented to try the case before the court; and, the evidence having been fully submitted, the court finds the facts established by the evidence to be as follows:

(1) The plaintiff, Fred A. McMaster, was when the suit was brought, and is now, the lawfully appointed administrator of the estate of Frank E. McMaster, deceased, having been appointed administrator of the named estate by the probate court of Woodbury county, Iowa; and furthermore said plain-

[1] The above is a syllabus of the opinion of Judge Shiras, though, following a ruling made by the circuit court of appeals for the Eighth circuit on an appeal in a suit in equity involving the same policies, judgment in this action was rendered for defendant.

tiff was when this suit was brought, and is now, a citizen of the state of Iowa, and a resident of Woodbury county, Iowa.

(2). That the defendant, the New York Life Insurance Company, was when this suit was brought, and is now, a corporation created under the laws of the state of New York; having its principal office and place of business in the city of New York, in the state of New York, but being also engaged in carrying on its business of life insurance in the state of Iowa, and other states.

(3) That in December, 1893, F. W. Smith, an agent for the New York Life Insurance Company, residing at Sioux City, Iowa, solicited Frank E. McMaster to insure his life in that company, and, as an inducement to taking the insurance, pressed upon McMaster the provision adopted by the company, and set forth in the circular issued by the company, and printed on the back of the policy issued by the company, under the heading. "Benefits and Provisions Referred to in This Policy," in the following words: "After this policy shall have been in force three months, a grace of one month will be allowed in payment of subsequent premiums, subject to an interest charge of 5 % per annum for the number of days during which the premiums remain due and unpaid. During said month of grace the unpaid premium, with interest as above, remains an indebtedness due the company; and, in the event of the death during the said month, this indebtedness will be deducted from the amount of insurance."

(4) Relying on the benefits of this provision, and in the belief that if he accepted a policy of insurance upon his life from the New York Life Insurance Company, paying the premiums thereon annually, the company could not assert the right of forfeiture until 13 months had elapsed since the last payment of the annual premium, the said Frank E. McMaster signed an application for insurance in said company, dated December 12, 1893, of the form which is made part of the policies sued on, and attached to the petition; the same being made part of this finding of facts.

(5) In the application, when signed by Frank E. McMaster, it was provided that the amount of insurance applied for was the sum of $5,000, to be evidenced by five policies, for $1,000 each, on the ordinary life table; the premium to be payable annually.

(6) There now appears on the face of the application, interlined in ink, the words, "Please date policy same as application." These words were not in the application when it was signed by McMaster, but after the signing thereof they were written into the application by F. W. Smith, the agent of the New York Life Insurance Company, without the knowledge or assent of Frank E. McMaster, and were so written in by the agent in order to secure to the agent a bonus which the company allowed the agents for business secured during the month of December, 1893; and it does not appear that Frank E. McMaster ever knew that those words had been written into the application, and it affirmatively appears that he had no knowledge thereof when the application was forwarded to the home office of the company, and was acted on by the company.

(7) By the express understanding had between F. W. Smith, the agent of the New York Life Insurance Company, and Frank E. McMaster, when the application for insurance was signed, it was agreed that the first year's premium was to be paid by McMaster upon the delivery to him of the policies, and that the contract of insurance was not to take effect until the policies were delivered.

(8) The defendant company, at its home office, in New York City, upon receipt of the application, determined to grant the insurance applied for, and issued five policies, each for the sum of $1,000, dated December 18, 1893, and reciting on the face thereof that the annual premium on each policy was $21, and forwarded the same to its agent, F. W. Smith, at Sioux City, Iowa, for delivery to Frank E. McMaster. These five policies are in the form of the one attached to the petition in this case, which is hereby made a part of this finding of fact, and each policy contains the recital: "This contract is made in consideration of the written application for this policy, and of the agreements, statements, and warranties thereof, which are hereby made a part of this contract, and in further consideration of the sum of twenty-one

dollars and ——— cents, to be paid in advance, and of the payment of a like sum on the twelfth day of December in every year thereafter during the continuance of this policy."

(9) The five policies, inclosed in envelopes, on or about December 26, 1893, were taken by F. W. Smith, the agent of the defendant company, to the office of Frank E. McMaster, who asked the agent if the policies were as represented, and if they would insure him for the period of 13 months, to which the agent replied that they did so insure him; and thereupon McMaster paid the agent the full first annual premium, or the sum of $21, on each policy, and, without reading the policies, he received them and placed them away. The agent did not in any way attempt to prevent McMaster from reading the policies, and he had the full opportunity for reading them, but in fact did not read them, and accepted them on the statement of the agent of the company as hereinabove set forth.

(10) That not later than November 17, 1894, notice was sent to Frank E. McMaster of the coming due of the premiums on the policies issued to him by the defendant company, in accordance with the requirements of the statutes of the state of New York.

(11) The renewal receipts for the second annual premium on the five policies held by Frank E. McMaster in the defendant company were sent for collection to Mary A. Ball, at Sioux City, Iowa, who on the 11th or 12th day of December, 1894, called on said McMaster for payment of the premiums in question. At that time McMaster declined making payment thereon; saying that he had seen other policies which promised better results, and that he did not think he would renew the insurance in the defendant company. Miss Ball told him the New York contracts had some nice provisions, like 30 days of grace, and loans, and, in reply to an inquiry from McMaster, stated that his policies entitled him to the month's grace in the payment of the premiums, and that, as she understood it, the grace on the second premiums would expire January 11th; and McMaster said, if he concluded to keep any of the insurance, he would call and pay for it before the grace expired.

(12) That in November or December, 1894, Frank E. McMaster was examined for the purpose of obtaining life insurance by the agents of the Union Central Insurance Company; it being understood between the parties that the policies were not to issue until in January, 1895, and it being the purpose of McMaster to take one or two thousand dollars insurance in the Union Central Company at the expiration of his insurance in the defendant company, but also to continue part of the policies held in the defendant company.

(13) That on or about January 15, 1895, the agent of the Union Central Company, meeting McMaster on the street in Sioux City, told him the policies issued by the Union Central Company had been received, and in reply McMaster said: "All right. Just hold them. There is no hurry about them." And in the same conversation he stated that he had other insurance,—referring to the policies in the defendant company.

(14) That the action of Frank E. McMaster shows, and the court so finds the fact to be, that the said McMaster believed that the policies issued to him by the defendant company would continue in force for the period of 13 months from the date of the policies, and his action with respect to the policies in the defendant company and the proposed insurance in the Union Central Company was based upon and governed by this belief on his part.

(15) That Frank E. McMaster died at Sioux City on the morning of January 18, 1895.

(16) That up to the time of his death the said Frank E. McMaster had not paid the second year's premiums on the policies issued to him by the defendant company, nor have the same been paid since his death; nor had the said McMaster received or paid for the policies issued by the Union Central Company, and the same had not been delivered or become effectual.

(17) That due and sufficient notice and proofs of the death of said Frank E. McMaster were immediately sent to and received by the defendant company; and due demand for the payment of the five policies sued on was made by the plaintiff, as administrator of the estate of Frank E. McMaster, and refused by the defendant company on the ground that the policies in

question had lapsed and were not in force at the time of the death of said Frank E. McMaster, by reason of the failure to pay the second year's premiums coming due on said policies.

(18) That the defendant company has not paid said policies, or any part thereof, and, assuming the same to be valid, there is due thereon, November 1, 1898, the sum of $5,965, after deducting from the face of the policies the amount of the second premiums, with interest thereon to March 14, 1895.

F. E. Gill and Taylor & Burgess, for plaintiff.
W. E. Odell and Swan, Lawrence & Swan, for defendant.

SHIRAS, District Judge. A suit in equity was brought in this court by the administrator of the estate of Frank E. McMaster against the defendant insurance company, praying a reformation of the policies in question, on the ground that the provision inserted therein making the second annual premiums payable on the 12th day of December, 1894, was not in accordance with the agreement of the parties; and upon the hearing of that case this court held that, under the rules of construction applied to contracts of this character, the plaintiff could recover at law thereon, but as the evidence clearly proved that the application signed by McMaster had been changed, after he signed it, by the interlineation of the words, "Please date policy same date as application" (this interlineation being made by the agent of the defendant company without the knowledge or assent of McMaster, which interlineation, made for the benefit of the agent of the defendant company, and against the interest of the applicant, McMaster, had caused the defendant, when issuing the policies, to make the second year's premium payable on December 12, 1894, although the policies were dated December 18, and not delivered until December 26, 1893), the policies ought to be reformed to accord with the actual agreement of the parties. McMaster v. Insurance Co., 78 Fed. 33. Upon appeal to the circuit court of appeals for this circuit, the decree of reformation was reversed; that court holding that the policies, in the form in which they were delivered, must be held to represent the contract of the parties; the court further expressing the opinion that no recovery could be had thereon at law or in equity. Insurance Co. v. McMaster, 30 C. C. A. 532, 87 Fed. 63. The case at law is now before the court; the question being whether a recovery can be had upon the policies in their present form, and under the facts now proven by the evidence.

The policies are dated December 18, 1893. They were delivered, and one annual payment of $21 was then paid on each policy. This payment and the delivery of the policies put in force contracts for insurance, good not for one year only, but good for the lifetime of McMaster. Thus, in Insurance Co. v. Statham, 93 U. S. 24, it is said:

"We agree with the court below that the contract is not an assurance for a single year, with the privilege of renewal from year to year by paying the annual premium, but that it is an entire contract for life, subject to discontinuance and forfeiture for nonpayment of any of the stipulated premiums."

In Thompson v. Insurance Co., 104 U. S. 252, it is ruled:

"We do not accept the position that the payment of the annual premium is a condition precedent to the continuance of the policy. That is untrue. It is a condition subsequent only, the nonperformance of which may incur a forfeiture of the policy, or may not, according to the circumstances. It is

always open for the assured to show a waiver of the condition, or a course of conduct on the part of the insurer which gave him just and reasonable ground to infer that a forfeiture would not be exacted."

Forfeitures are not favored, either at law or in equity; and to sustain the right to declare a contract, which has gone into effect, forfeited by reason of a subsequent failure to perform its conditions, it is incumbent on the party pleading the forfeiture to clearly establish the defense; and in the case of contracts like insurance policies, wherein the assured has no voice in the selection of the terms used, the construction must be against the party who prepared the contract; and, furthermore, if there be found in the policy provisions which are inconsistent or contradictory, force must be given to those that sustain, rather than to those which would forfeit, the contract.    Thus, in National Bank v. Insurance Co., 95 U. S. 673, 678, it is ruled:

"But, without adopting either of these constructions, we rest the conclusion already indicated upon the broad ground that when a policy of insurance contains contradictory provisions, or has been so framed as to leave room for construction, rendering it doubtful whether the parties intended the exact truth of the applicant's statements to be a condition precedent to any binding contract, the court should lean against that construction which imposes upon the assured the obligations of a warranty.    The company cannot justly complain of such a rule.    Its attorneys, officers, or agents prepared the policy for the purpose, we shall assume, both of protecting the company against fraud, and of securing the just rights of the assured under a valid contract of insurance.    It is its own language which the court is invited to interpret, and it is both reasonable and just that its own words should be construed most strongly against itself."

In this case, on page 675, it is said:

"The entire application having been made, by express words, a part of the policy, it is entitled to the same consideration as if it had been inserted at large in the instrument.    The policy and application together therefore constitute the written agreement of insurance, and, in ascertaining the intention of the parties, full effect must be given to the conditions, clauses, and stipulations contained in both instruments."

In the policies sued on in this case the applications are attached to the policies, and are expressly made part thereof, and therefore full effect must be given to the stipulations and provisions therein contained.    It is a familiar rule in the construction of contracts that the court should, so far as possible, place itself in the position the parties occupied when the contract was entered into; and to this end it may follow the successive steps which the evidence proves were taken by the parties themselves when entering into the contract which is before the court for construction.    The policies sued on recite on their face that they are made in consideration of the provisions of the applications, and it is well known that the making of the application precedes the issuance of the policy; so we turn to it, in the first instance, to ascertain from its provisions what the contract was which the parties proposed to enter into.    The application contained the usual questions as to the age of the party, his previous condition of health, and other like matters; and then clause 10 required a statement of the sum to be insured, of the premiums payable (whether annually, semiannually, or quarterly), and on what table the premium is to be calculated (whether on that of ordinary life, ·

endowment, or limited endowment). The applicant, in the mode pointed out on the application, stated that he desired insurance in the sum of $5,000, in the form of five policies, of $1,000 each; the premiums to be payable annually; the amount thereof to be calculated on the ordinary life table; it being also stated that the policies issued on these applications should not be in force until the first premiums thereon were paid to the company or its agent. As is well known from the common custom of insurance companies, and as appears from the form of the application prepared by the defendant company, a choice is given to the applicant to determine whether the premiums are to be paid at intervals of a quarter of a year, of a half year, or yearly; and the amount of each payment is fixed by the selection made by the applicant. So, also, a choice is given to the applicant to determine whether the payment of premiums is to be continued during the lifetime of the assured, or is to cease at the end of a named period of years; the amount of each premium being affected by the choice made in these particulars. When the insurance company submits to the party to be insured, as was done in this case, a form of application which requires the applicant to determine the table according to which the amount of the premium is to be calculated, and also the time when payable,—whether quarterly, semiannually, or annually,—and the applicant makes his selection in these particulars, and the policy is issued upon the basis of the application, certainly both parties must be bound thereby. Thus, in this case, when the company submitted the application to the assured for the purpose of having him determine whether the payments of the premiums should be made quarterly, semiannually or annually, and also upon what table of rates the premiums should be calculated, and the assured, in the manner required by the application submitted to him, declared that the premium was to be paid annually,—the amount to be calculated on that basis by the ordinary life table,—and thereupon the company issued the policy, making this application part of the contract between the parties, what was the result? The agreement of the parties was that the first premium was to be paid in advance; that is, the contract of insurance was not to take effect until the premium was paid. It was also agreed that the premiums were to be paid annually (that is, each subsequent premium was to become due and payable after the lapse of one year from the time the preceding premium became due), and the amount of each yearly payment was to be calculated on the basis of the ordinary life table. Naturally the next question that would arise would be as to the effect of a failure to pay any of the premiums coming due after the policy had become effectual. Unless the contract contains a provision authorizing a forfeiture thereof for nonpayment of premiums, a policy of life insurance which has once gone into effect will not be terminated by the failure to pay subsequent premiums. In such case the only right the insurance company has is to set off against the amount due on the policy the amount of the unpaid premiums, with interest thereon from the time each payment came due. Hence it is that the life companies make provision for forfeiture for nonpayment of premiums, under certain

terms and conditions. The evidence in this case shows that this question of the right of forfeiture did in fact arise, and it was answered by pressing on the attention of McMaster the provisions found under the head of "Benefits and Provisions Referred to in This Policy," in which it is provided that premiums are due and payable at the home office of the company, or to agents holding properly signed receipts; it being then stated:

"If any premium is not thus paid on or before the day when due, then (except as hereinafter otherwise provided) this policy shall become void, and all payments previously made shall remain the property of the company." "After this policy shall have been in force three months, a grace of one month will be allowed in payment of subsequent premiums, subject to an interest charge of five per cent. per annum for the number of days during which the premium remains due and unpaid. During said month of grace, the unpaid premium, with interest as above, remains an indebtedness due the company; and, in the event of death during the said month, this indebtedness will be deducted from the amount of the insurance."

When the company, in the form of the application submitted to McMaster, stated that the policy would not become binding until the first premium was paid, the company declared that the first premium must be paid in advance (that is, at the time the policy would go into effect); but, as to the subsequent premiums, the company gave McMaster the right to say whether they should be made payable quarterly, semiannually, or annually; and when he made the choice, agreeing to pay the same annually, that fixed the times at which the subsequent premiums were to come due; and when the company accepted this application, and made it, not only a part of, but the very basis of, the contract of insurance, it seems clear that the company must be bound by its terms. The choice given to McMaster in selecting the mode of payment of the premiums gave one year as the longest limit. He could select a year, or a less period; that is, a quarter or a half year. By electing to pay the premiums annually, McMaster indicated that his purpose was to have a year's interval between the dates when payment could be demanded of him; and by issuing the policy on an application thus worded, by calculating the premiums on the basis of annual payments, and stating on the face of the policy that the amount of the annual premium was $21 on each policy, and by accepting that amount from McMaster, the company clearly agreed, on its part, that, after the taking effect of the policies by the payment of the first annual premium, the payment of the subsequent premiums could only be demanded after the lapse of one year from the date when the preceding payment came due. The company, by calculating the premiums on the basis of annual payments, and by demanding and accepting from McMaster one full year's premium as the payment necessary to be made to put the policies in force, put its own construction on the application, and thereby showed that it understood that it was entitled to demand payment of the premiums by yearly installments of $21 each; and as McMaster had, in writing on the face of the application, stated that he wished the premiums to be made payable annually, there can be no doubt that both parties understood that the first premium was to be paid in advance, in order to give life to the contract, and that the subsequent payments were to be made yearly thereafter. The company,

at its home office, concluded to accept the risk, and thereupon issued five policies, dating them December 18, 1893, and forwarded them to Sioux City, where they were delivered to McMaster on December 26th; he paying the first year's premiums on the delivery of the policies. Granting the contention of the company that, under the usual practice in such matters, the payment, although actually made on the 26th, is deemed to have been made on the day of the date of the policies (that being the time when the company decided to accept the risk), then the situation would be this: On the 18th of December, 1893, the company entered into a contract of insurance with McMaster, in which it was agreed that the premiums were to be paid annually; and the company on the 18th of December received the first year's premium in full, and delivered the policies. Suppose at the end of three months the company had demanded of McMaster the payment of a further or second premium; would it not have been open to him to reply that the agreement was that the payments were to be made annually; that the first payment had been made, and the policy was dated December 18th, and therefore the next payment was not due or demandable until the expiration of a year from that date? Could the company, in response thereto, be permitted to aver: "It is true, when negotiations touching this insurance were pending we required of you to determine the mode in which the premiums were to be calculated and to be made payable. It is true that, in the application submitted to you for that purpose, you stated that the payments were to be made annually, and were to be calculated according to the ordinary life table, on the basis of yearly payments. It is true that we issued the policies on the basis of the application signed by you, and expressly made it a part of the contract between us. It is true, we calculated the amount of the premiums to be paid on the basis of yearly payments. It is true that on the face of the policies we stated that the annual premium was $21 on each policy. It is true that, when we delivered the policies to you, we demanded and received from you one full year's premium, and thereupon delivered to you the policies; they being dated December 18, 1893. It is true that only three months from that date has elapsed, but we are entitled to now demand payment of another premium, because we wrote in on the face of the policies a provision which makes the second premium payable at the end of three months, and you accepted the policies in this form; and therefore, unless you now pay this second premium, we will declare the policies forfeited, and we will retain for our own benefit the full year's premiums paid by you, although three months only of that year has elapsed." Would a court, either of law or equity, be justified in so construing the contract of the parties as to permit a forfeiture in case the assured did not pay the second premium at the end of three months? It is the well-settled rule that in construing a contract all parts and provisions thereof are to be considered. What constitutes the contract of insurance, upon which the rights of the parties in this case depend? This question is answered by the supreme court in the case (already cited) of National Bank v. Insurance Co., 95 U. S. 673, wherein it is declared that:

"The entire application having been made, by express words, a part of the policy, it is entitled to the same consideration as if it had been inserted at large in that instrument. The policy and application together therefore constitute the written agreement of insurance, and, in ascertaining the intention of the parties, full effect must be given to the conditions, clauses, and stipulations contained in both instruments."

Taking up, then, for consideration, the contract between the parties, we find in one portion of it an express provision that the premiums to be paid are to be paid annually, and that the amount thereof is to be calculated on that basis, according to the ordinary life table. Turning to another portion of the contract, we find a provision which requires the second and subsequent premiums to be paid at periods less than one year from the date of the contract, and from the time when the first payment was made. Under the first provision, the assured cannot be required to pay the second premiums until after the lapse of one year from the date of the contract. Under the second provision, payment of the second premiums is demandable in a period of less than one year. These provisions are clearly inconsistent and contradictory. The rules of construction in case contradictory provisions exist in the same contract are well settled. Where, as is the fact with reference to insurance contracts, one party prepares the form of the contract, and requires the other party to accept it as thus prepared, the construction thereof must be against the party who prepared the contract. If possible, the contract must be so construed as to sustain it, and not to defeat it. If the parties by their own action have agreed upon a construction of the contract, that may be followed as the guide to the intent of the parties. When the company, having issued the policies sued on, took action thereon, it demanded from McMaster a full year's premium, and he paid the same; and thus both parties clearly showed that, as they understood the contract, it was based upon the payment of annual premiums. That this was the understanding of the company is further evidenced by the fact that the amount of each premium to be paid, as shown upon the face of the policy, is $21; that amount being entered under the words "Annual Premium," which are placed on the side of the first page of the policy, in a position to catch the eye,—being so placed, doubtless, so that any one interested will see at a glance the amount of the premium, and period of payment. If the contention of the defendant to the effect that, under the contract of the parties, it could rightfully demand payment of the second premium before the expiration of a year from the date of the policies, is sustained, it follows that the contract will be forfeited, whereas the recognized rule requires a construction that will sustain the contract, if that be possible. The purpose McMaster had in view in entering into the contract was to secure indemnity in the sum of $5,000 to his estate, in case of his death; and, to secure this indemnity, he agreed to pay to the company the yearly sum of $21 on each policy. The purpose of the insurance company in entering into the contract was to obtain the benefit of the yearly premiums called for by the contract, and, to induce the payment thereof, the company agreed to indemnify the estate of McMaster, upon his death, in the sum of $5,-000; and, to secure the payment of the yearly premiums, it was fur-

ther provided that under certain conditions the contract might be forfeited for nonpayment of an overdue premium. If the contracts of insurance be now held valid, the purpose of McMaster in entering into the same will be fulfilled, as his estate will thus receive the indemnity he paid his money to secure. So, also, the purpose of the insurance company will be fulfilled, in that it will be entitled to retain the premium already paid, and to be paid any other premium that had become due before the death of McMaster. If, however, the contracts of insurance are held to be invalid and nonenforceable, then the purpose of McMaster in entering into the same will be wholly defeated, and the insurance company will be allowed to avoid its promise to pay the amount of the policies on the death of the assured, while it is permitted to retain the sums paid it to secure indemnity. In effect, the contention of the defendant company now is that the contract of insurance must be construed in its favor; that it should be so construed as to defeat the purpose for which it was made, and to declare it forfeited, rather than to sustain it; and, finally, in construing its provisions the construction already put thereon by the parties must be disregarded. The pivotal point in the case is whether the contract of insurance provides on its face that the premiums were to be paid annually. If it does, this means that the second premium cannot be demanded and does not become due and payable until a full year has elapsed after the date of the policy. Taking into consideration the fact that the company required McMaster to designate on the face of the application whether the premiums were to be paid quarterly, semiannually, or annually; that McMaster declared his choice to be for annual payments, and so stated on the face of the application; that the company accepted the application as thus made, and issued policies which in terms make the application part of the contract; that the form of the policies issued by the company is that used when the premiums are to be paid annually; that the amount of the several premiums to be paid were by the company calculated on the basis of annual payments, and the amount thereof was stated on the side of the policies under the heading "Annual Premium"; that when the company delivered the policies it demanded from McMaster, and he paid, one year's premium in full,—can there be any possible doubt that the parties understood that the contracts of insurance entered into between them provided for annual payment of the premiums? Can there be any doubt that when McMaster received the policies dated December 18, 1893, and paid one year's premiums thereon, he was justified in assuming that, if he died within one year from the date of the policies, his estate would receive the indemnity which it was his purpose to secure, even though the policies did not contain the provision giving one month's grace on subsequent payments. Suppose McMaster had died on the 1st of December, 1894, less than one year from the date of the policies; would it be open to the company to deny liability on the policies on the ground that it had put in the policies a provision that the second premiums were payable on October 1, 1894? That is exactly the claim now made by the defendant company. If the company, after accepting a proposition to insure McMaster on the basis of annual premiums, can

make the second premiums payable in six days less than a full year, —which is its claim in the present case,—it could have made the second premiums payable in three or six months, and would thus change the policy from one wherein the premiums were payable annually into one wherein the premiums were payable quarterly or semi-annually. In such case it would appear that the contract of insurance contained inconsistent and contradictory provisions, and in that event the settled rules of construction require that force shall be given to the provisions which will sustain the contract, rather than to those which would work a forfeiture thereof.

I repeat the assumed case already stated: Suppose these policies did not contain the provision with respect to the so-called month of grace in the payment of subsequent premiums, but did contain a provision that, if the premiums were not paid on the day they came due, the policies were forfeited. Suppose the contract of insurance had been entered into in the mode proven in this case, and the policies, in the present form, except as to the forfeiture clause, had been issued, dated December 18, 1893, and had been delivered upon the payment by McMaster of one full year's premium thereon, and that McMaster had died on the 15th of December, 1894; that is, in less than a year from the date of the policies. Would it be open to the defendant company to claim a forfeiture of the contracts, under such circumstances? Could the company be permitted to say: "It is true, we required McMaster to designate the kind of policy we were to issue, and he selected policies to be based upon annual payment of the premiums, and so stated in the application. It is true, we issued policies of the form used for annual payments. It is true that we calculated the premiums on the basis of annual payments, and stated the amount on the face of the policies. It is true, when we delivered the policies, we demanded, and McMaster paid us, one year's premium in full. It is true, McMaster died in less than one year from the date of the policies. But his estate cannot recover the indemnity he had paid for, because we put into the policy a provision making the second premium due and payable on the 12th of December, and, as McMaster had not paid this second premium, his estate cannot recover, even though it be true that he died in less than a year from the date of the policy." Would a court be justified in holding that a forfeiture of the contract had happened under such circumstances? Would not the answer be that the application, which forms part of the contract between the parties, expressly provided that the premiums were to be payable annually, and the act of the company in so wording another part of the contract as to require the second premium to be paid in a less period simply resulted in putting contradictory provisions in the contract, in which event the construction must be most favorable to the assured, and in favor of sustaining the policy. But it is said that in this supposed case the party assured died during the year for which the premium had been paid, and that while a court would not permit a forfeiture during that period, because in fact the premiums for that period had been paid, yet a different rule would prevail if the party died after the year for which the premium was paid had elapsed, but during the

so-called month of grace.    If policies of life insurance were like fire insurance contracts, where the risk assumed by the company terminates at a date fixed in the contract, there might be some force in the argument; but such is not the case, and the analogy suggested is misleading.   In fire insurance contracts the risk is assumed for a fixed period, and the premiums demanded and paid only keep the contract in force for a named and known period.   When that period elapses the contract is at an end, unless new life is given it by a renewal for another fixed period, and in such cases the payment of a year's premiums only entitles the insured to protection against loss for that period.   In cases of life insurance under policies such as are sued on in this case, the contract of insurance, when once it takes effect by payment of the first year's premium and delivery of the policies, does not terminate at the end of the year, but it is a contract for the life of the assured.   In other words, when the company in this case issued these policies under date of December 18, 1893, received payment of the first premiums thereon, and delivered the policies to McMaster, the company agreed on its part to pay the amounts called for in the policies to the estate of McMaster upon his death, whenever that event might occur.   If the policies contained no provision for the forfeiture thereof, no further payment on part of McMaster would have been needed to keep the policies in full force. All the company could demand in such case would be the right to set off against the amount of indemnity it had bound itself to pay the amount of the premiums remaining unpaid, with interest thereon.

The fact being proven that the first premiums on the policies were in fact paid to the company, and that the policies were delivered to McMaster, it follows that, from the time of the delivery of the policies, McMaster had contracts which bound the company to pay his estate the sum of $5,000 on his death.   By their terms the policies of insurance, as contracts, extend, not from year to year, but from their date (December 18, 1893) until the death of McMaster, whenever that might occur.   The payment of the first premium and the delivery of the policies put them into effect for this period, and not solely for one year, subject to the right of forfeiture secured to the company.   Therefore when McMaster died, on the 18th of January, 1895, the company was bound to pay to his estate the amount called for by the policies, unless the same had become forfeited under some provision thereof securing the right of forfeiture to the company. The provisions of the policies already quoted in full do not declare that the same shall be forfeited if a premium comes due and is not then paid, but it is declared that during one month after a premium becomes due the company will decree the unpaid premium to be an indebtedness due the company, running at interest, and that, if the assured dies during this month of grace, the amount of the unpaid premium, with interest, will be deducted from the sum due on the policy.   Under this clause of the policy, to entitle the company to declare the contract forfeited it must appear that a premium has become due and demandable, that a full month has elapsed since the premium became thus due, and that during this month the amount of the premium, with interest, has not been paid, and that the assured

is still living.    If during the so-called month of grace the premium is paid, with interest, or if the party insured dies, the right of forfeiture does not accrue, and the policies remain in full force.    The so-called month of grace does not begin to run until a premium becomes due and demandable from the person insured, and thus we come back to the question, when did McMaster become bound to pay the second premiums on the policies sued on?    If the payment of the second premiums could not be properly demanded of him until the expiration of one year from the date of the policies, then the second payment did not become due until December 18, 1894; the month of grace would not begin to run until that payment became due, and, being a calendar month, it would extend to and would include the 18th day of January, 1895, on the morning of which day McMaster died.    Therefore it is that the company claims that the second premium became due and payable on December 12, 1894.    If the contract between the parties, when considered in all its clauses and provisions, shows that it was agreed and understood between the parties that the second premium was to become due and payable on December 12, 1894, then it is clear that when McMaster died the policies had become forfeited, and, of course, no recovery thereon can be had.    If, however, the contract shows that McMaster contracted with the company on the basis of payments to be made annually, and the company dealt with him on that basis, but, to serve the interests of its own agents, it, without consulting McMaster or calling his attention thereto, introduced a provision into the policy which makes the second premium payable in less than a year, and it thus appears that in the same contract there are to be found inconsistent and contradictory statements and provisions, then, under the settled rules of construction, the court should give force to those provisions which will prevent a forfeiture, which will sustain the contract, and will be most favorable to the assured, disregarding those which would lead to the contrary result.    But it is said the company was justified in what it did with respect to making the second premium due and payable in less than a year, by reason of the statement written into the face of the application, asking that the policy be dated the same as the application, and that it is not open, in an action at law, to show that these words were not in the application when the same was signed by McMaster, but had been written in the application, after it had been signed, by the agent of the company; and therefore these words must be taken to be the act of McMaster, upon which the company had a right to rely.    The provisions of section 1750, Code Iowa, were in force in 1893, when these contracts of insurance were entered into, and this statute makes the act of a solicitor or other agent acting for the company the act of the company, and not the act of the applicant for insurance.    In the case of Insurance Co. v. Chamberlain, 132 U. S. 304, 10 Sup. Ct. 87, this statute was construed by the supreme court with respect to a life policy issued by a foreign company in Iowa, it being held that:

"This statute was in force at the time the application for the policy in suit was taken, and therefore governs the present case.    It dispenses with any inquiry as to whether the application or the policy, either expressly or by

necessary implication, made Boak the agent of the assured in taking such application. By force of the statute he was the agent of the company in soliciting and procuring the application. He could not by any act of his shake off the character of agent for the company. Nor could the company by any provision in the application or policy convert him into an agent of the assured. If it could, then the object of the statute would be defeated. * * * His act in writing the answer which is alleged to be untrue was, under the circumstances, the act of the company."

The case just cited was an action at law based upon a life insurance policy issued on the life of Richard Stevens. The defendant company pleaded that in the application signed by Stevens there was a misstatement of a material fact, in that it was therein stated that Stevens had no other insurance on his life, whereas in fact he had, when the application was signed, a large amount of insurance in co-operative companies. On the trial before the jury the court permitted the plaintiff to show by oral testimony that the answer to the question about other insurance was written into the application by the agent of the insurance company after he had been informed that the applicant that he held this co-operative insurance. The supreme court affirmed the action of the trial court; holding that under the statute of Iowa it was open to the plaintiff to prove by whom the statement in the application had in fact been written, and that, it appearing from the evidence that the statement was written by the soliciting agent of the company, it must be held, in law, to be the act of the company, and being its act, and not that of the assured, it could not be relied on to defeat a recovery on the policy, even though it appeared that it was so written into the application before Stevens signed the same. Under the ruling of the supreme court in the case just cited, it must be held that it is open to the plaintiff to show that the words, "Please date policy same as application," were written into the application, not by McMaster, but by the agent of the company, and that they were so written after the application had been signed by McMaster, and without his knowledge or assent. As the proof is clear that these words were thus written into the application by the agent of the company, and without the knowledge of McMaster, it is settled that the placing them in the application was, in law, the act of the company, and not that of McMaster; and the company cannot rely on its own act, done without the knowledge or assent of the assured, as a ground for estopping the assured or his representative from claiming that under the contract of insurance the premiums were to be paid annually. But furthermore the company did not in fact comply with the clause thus written into the application. That requested that the policies should bear the same date as the application, which was December 12, 1893. The policies, when issued, were dated December 18, 1893; and thus the company refused to comply with the request written into the application. Having refused the request as made, upon what theory can it be said that it made the second premium payable on December 12, 1894, at the request of the assured? Neither on the face of the application nor in any other way was such a request made by McMaster or by any one else. The company, by its own act, not requested or authorized by McMaster, chose to write into the policy the provision making the second premium come due

at a time less than one year after the date of the policy; and there exists no ground for the claim that McMaster was bound by the act of the company, by way of estoppel or otherwise.

But it is contended on behalf of the defendant that when the policies were delivered to McMaster they contained the provision making the second premium due and payable on December 12, 1894, and by accepting them with this provision he indicated his consent to this change in the time of payment. If the evidence proved that the company called McMaster's attention to this provision of the policies, and that he assented thereto, there would be foundation for the claim made; but the evidence proves that his attention was not called to the provision, and that he accepted the policies and made payment therefor without reading the same, in reliance upon the statement of the agent of the company that the policies were in exact accordance with the terms previously agreed upon. There is nothing therefore in the facts proven from which it can be inferred that McMaster ever knowingly assented to the provisions now found in the policies, whereby the second payment of the premium was made payable at a date less than one year from the date of the policies. But it is said that, even though he did not read the policies, he had the opportunity to do so, and therefore that it must be held that he agreed to accept and be bound by the contracts in the form in which they were delivered and accepted. Granted. What do the contracts, properly construed, require with respect to the payment of the second premiums? Turning to that part of the contract set forth in the application, there is the statement, in plain words, "Premium payable annually." The policies are dated December 18, 1893, and the first premiums were paid on December 26th; but, under the custom of insurance companies, it is considered the same as though paid on the 18th, the date of the policies. Certainly, under this clause of the contract, the second payments could not become due or be claimed until the lapse of one year from December 18, 1893. Turning to another clause of the contract, we find a provision making the second premium due and payable in less than one year from the date of the policies. Are these provisions consistent, or are they inconsistent and contradictory? If inconsistent and contradictory, then it is the settled law that force shall be given to the provision that maintains the life of the contract, and that protects the assured rather than the company, through whose fault these inconsistent and contradictory provisions have been introduced into the contracts. Admitting, therefore, that McMaster is to be bound by the contracts in the form in which they were delivered, he can only be held bound by the legal construction thereof as a whole; and thus we come back in every instance to the crucial question, do these contracts contain contradictory provisions with respect to the time when the second premium could be rightfully demanded from McMaster? Upon that question depends the result in the case.

But it is further contended that there is some evidence tending to show that McMaster did not intend to make a second payment of premiums on these policies, and therefore his representative ought not to recover thereon, as McMaster died after the year for which he had paid the premiums had expired. If policies of life insurance

were like fire policies, in that they terminate at a fixed date, there might be some force in this argument; but as already stated, and as expressly ruled in Insurance Co. v. Statham, 93 U. S. 24, and Thompson v. Insurance Co., 104 U. S. 252 (cases already cited), contracts of life insurance, such as those sued on, are good for the lifetime of the assured. Therefore, when McMaster died these policies were in force, unless they had become forfeited under the provisions of the policy. There is nothing in the evidence which tends to show that McMaster intended to waive any benefit or protection these contracts would give him, or to yield up any right which his estate might lawfully assert thereunder in the event of his death. There is some evidence tending to show that McMaster contemplated taking a policy in another company in lieu of part of his insurance in the defendant company, but this purpose had not progressed so far that he had released the defendant company from its liability on the policies sued on, nor can it be known, if McMaster had lived, whether in fact he would have finally forfeited any part of this insurance or not. During his lifetime he had done no act which released the company from its obligations, and therefore the company is bound to the payment of the sums called for by these policies, unless it be held that the same, when McMaster died, had become forfeited for nonpayment of the second premiums due on the policies, and which forfeiture could not be claimed, unless it be true that a full calendar month had elapsed between the date when these premiums could be lawfully demanded and the date of McMaster's death. To sustain the plea of forfeiture, it must be held that the parties had contracted and agreed that the second premiums should come due in a period less than one year from the date of the policies. If there is doubt on this question,—if the contracts between the parties contain contradictory provisions on this point,—then the court is required to look at, and give due weight to, the acts of the parties with reference to the contracts, and to apply the rule that forfeitures are not favored, and that the construction must be against the party who prepared the contract. Can there be any doubt, under the evidence in this case, that the parties understood and agreed that the insurance furnished to McMaster was to be based upon the payment of premiums annually? Can there be any doubt that the company calculated the amount of the premiums on the basis of annual payments? Can there be any doubt that McMaster paid the sums demanded of him, and received the policies, upon the understanding that the subsequent premiums were to come due annually, and not at some shorter period? In short, can there be any doubt that both parties dealt with each other upon the express agreement that the first premium was to be paid down when the policies were delivered, and the second premium was to come due in one year? Can there be any doubt that upon the face of the application, which is an essential part of the contract between the parties, it is written that the provisions are to be payable annually? The policies are dated December 18, 1893, and did not take effect, actually or constructively, before that date. The premiums, being payable annually, are to be paid then,—the first as of the date of policies, and the subsequent premiums annually thereafter. But the company now claims that by its own

act it placed in the contracts a clause which enables it to demand the payment of the second premiums in less than one year from the date of the policies. Thus, the company, by its own act, and without the actual knowledge or assent of McMaster, has made these contracts of insurance self-contradictory; and, this being so, then the construction ought to be against the company, against the forfeiture, and in favor of that construction which carries out the real agreement and understanding which the evidence demonstrates existed between the parties to these contracts.

If free to give judgment according to my own view of the questions involved, I should find for the plaintiff; but, as already stated, the circuit court of appeals held in the equity case that there could be no recovery on the policies, at law or in equity, and I deem it my duty to follow this ruling, leaving it to the plaintiff to carry this action at law before that court for its further consideration; and therefore, while my opinion is with the plaintiff, the judgment must be for the defendant