TAYLOR et al. v. PROVIDENT SAVINGS LIFE ASSUR. SOC.

(Circuit Court, W. D. Pennsylvania. January 30, 1905.)

**1. LIFE INSURANCE—CONSTRUCTION OF CONTRACT—GRACE FOR PAYMENT OF PREMIUMS.**

A life insurance policy for a term of 5 years, with a stipulation for renewal at a higher rate of premium, recited that it was issued in consideration of the payment in advance of a stated premium "on or before the 28th day of December in every year" during its continuance. It provided that it should not go into effect until the first premium had been actually paid "during the lifetime and good health of the assured," and contained this further provision: "A grace of thirty days will be allowed in the payment of premiums hereafter due on this policy, provided always that when advantage is taken of this grace, interest at the rate of five per cent. per annum shall be paid to the Society for the time deferred." During the 5-year term, the insured died within 30 days after the 28th of December, the premium then due not having been paid; and within the 30 days such premium, with interest, was tendered and refused. *Held*, that the policy came within the settled rule that all life insurance contracts are intended to .run. for the life of the insured, subject to forfeiture for nonpayment of premiums, and not merely from year to year, the payment of each premium effecting a renewal, and that under the provision for grace the policy was continued in force during the 30 days, within which time the premium might be paid by the insured, or on his death by his representatives.

**2. SAME—TERMINATION OF POLICY—DECLARATION BY INSURED.**

A statement by an insured that he did not intend to pay a premium on his policy, which was due, but not then demandible, made to an agent who had no authority to change the contract on behalf of the company, did not have the effect of terminating the policy.

At Law. On questions reserved.

McCleave & Wendt and W. O. McNary, for plaintiffs.
Reed, Smith, Shaw & Beal, for defendant.

BUFFINGTON, District Judge. On December 28, 1900, the defendant, the Provident Savings Life Assurance Company of New York, issued its policy to Selwyn M. Taylor, insuring his life for. $25,000, provided death ensued within five years. The policy was termed a "combined term and renewal option" one, and stipulated for its renewal at the expiration of five years at a higher rate of premium. It recited it was granted in consideration "of the payment in advance of four hundred and seventy-five and ⁵⁰/₁₀₀ dollars on or before the 28th day of December in every year during the continuation of the policy." Under the head of "Privileges and Conditions," the policy provided, "This policy does. not go into effect until the first premium hereon has

been actually paid during the lifetime and good health of the assured;" under the subhead of "Grace in the Payment of Premiums," that "A grace of thirty days will be allowed in the payment of premiums hereafter due on this policy, provided always that, whenever advantage is taken of this grace, interest at the rate of five per cent. per annum shall be paid to the Society for the time deferred;" and further that "this policy shall be indisputable after two years from its date of issue, for the amount due, provided the premiums are duly paid as set forth above." The insured duly paid his initial premium and those falling due on December 28, 1901 and 1902. The payment falling due on December 28, 1903, was not paid. The insured died January 24, 1904. The premium, with interest, was tendered the company January 25, 1904. Payment having been declined, suit was brought, and a verdict rendered in favor of the plaintiffs, Taylor's executors, subject to the reserved questions "whether the omission of the insured to pay the premium during his lifetime precluded the right of recovery," and "whether the declaration of the insured to the agent of the company when he requested payment of the premium of January 22, or 23, 1904, that he did not intend to continue the policy, was a waiver of the claim, and terminated his rights under the policy." The court is now moved to enter judgment for the defendant on these reserved questions.

The rights of the parties depend on the terms of the particular contract or policy here involved. By it Taylor obtained insurance upon his life for five years, with the right to a continuance or renewal of such insurance thereafter upon an increased premium, on one of several optional plans and without medical examination. Now, while the provisions for premium, payment and forfeiture for the five-year term alone are here involved, yet, in view of the recited provisions, looking toward a continuance of the policy for life, the contract may be regarded as one intended to cover the whole life of the insured. In construing life insurance contracts, due regard is to be given the fundamental principle which distinguishes them from fire insurance policies. In the latter the contract is from year to year, and its continuance is dependent upon yearly renewal by the payment of annual premiums. In life insurance, however, we start from a different standpoint. By the payment of the initial premium a contract is entered into which contemplates an insurance for the entire life of the insured, and such insurance for life is his object. The company, for its protection, provides for a forfeiture of the contract in case premiums which compensate it for the risk are not paid at certain times. The absolute necessity of making provision for forfeiture for nonpayment of premiums is apparent, for, if a life policy does not provide for forfeiture by reason of nonpayment of premiums, the policy would run for life. McMaster v. New York Life Insurance Company (C. C.) 90 Fed. 46. In such case the insurance would continue, and the company could charge the unpaid premiums against the insurance, and collect them on final settlement. When the initial premium is paid, the parties then start, from the standpoint of the insured, with a contract covering his entire life; from the standpoint of the insurer, with provision for forfeiting such contract in case the premiums are not paid at stipulated times. The nature of a life insurance contract in that respect is fixed by the Su-

preme Court of the United States. In New York Life Insurance Company v. Statham, 93 U. S. 24, 23 L. Ed. 789, it was said:

"We agree with the court below that the contract is not an assurance for a single year, with the privilege of renewal from year to year by paying the annual premium, but that it is an entire contract of assurance for life, subject to discontinuance and forfeiture for nonpayment of any of the stipulated premiums. Such is the form of the contract, and such is its character. It has been contended that the payment of each premium is the consideration for insurance during the next following year, as in fire policies. But the position is untenable. * * * Each installment is, in fact, part consideration for the entire insurance for life. It is the same thing where the annual premiums are spread over the whole life."

As this was followed in McMaster v. New York Life Insurance Company, 183 U. S. 35, 22 Sup. Ct. 10, 46 L. Ed. 64, where the court say:

"The contracts were not assurances for a single year, with the privilege of renewal from year to year on payment of stipulated premiums, but were entire contracts for life, subject to forfeiture by failure to perform the condition subsequent of payment as provided, or to conversion in 1913 at the election of the assured. Thompson v. Insurance Company, 104 U. S. 252, 26 L. Ed. 765; New York Life Insurance Co. v. Statham, 93 U. S. 24, 23 L. Ed. 789."

—We may regard this view of a life insurance contract as authoritatively settled.

Such being the case, this policy being for the life of Taylor, the next question is, was it forfeited? As stated above, the rights of these parties depend wholly upon the contract they have made, and therefore the crucial question in this case is to ascertain its meaning. At the outset we are met by the fact that this is a question on which fairminded men differ. Able counsel take different views, and the court found it one which called for careful study and research. Such being the case, it is manifest that, when the parties entered into it, terms were used which left their respective rights open to construction and differences of opinion on the all-important questions—to the insured, of continuance, and to the insurer, of forfeiture. Now, how does the law regard and treat such a state of uncertainty? In considering the clauses which are alleged to forfeit, the principle is to be borne in mind that if policies are open to a double construction, that one will be adopted which avoids forfeiture. McMaster v. New York Life Insurance Co., supra; National Bank v. Insurance Co., 95 U. S. 673, 24 L. Ed. 563; Thompson v. Phœnix Insurance Co., 136 U. S. 287, 10 Sup. Ct. 1019, 34 L. Ed. 408. For, as was said in Worden v. Guardian Mutual Life Ins. Co., 7 Jones & S. 317:

"Forfeitures are only enforced when it is clearly shown that they were meant by the actual agreement of the parties. * * * If a life insurance company, with a view of attracting the public and promoting its own business, chooses to extend the period for the payment of semiannual premiums through a period of thirty-five days, and to employ language tending to indicate that the risk is extended through the same period, or which might bear that construction, it is not just that its reasonable intent should be defeated by an interpretation in favor of the insurers."

Such principle of construction is justly based on the fact that the policy is prepared by the company, and, if the language it adopts is open to two constructions, it is reasonable that the one most favorable to the assured prevail. Now, while the policy before us provides for

the payment of the premium "on or before the 28th of December in every year during the continuance of this policy," this is modified by the privilege noted above, that:

"A grace of thirty days will be allowed in the payment of premiums hereafter due on this policy, provided always that whenever advantage is taken of this grace, interest at the rate of five per cent. per annum shall be paid to the Society for the time deferred."

What is meant by this provision? If the grant of the grace month had stopped with the first clause—in other words, had it been, "A grace of thirty days will be allowed in payment of premiums hereafter due on this policy"—would there be any doubt as to what these words meant? Do they, without any implication injected into them, mean anything to the ordinary mind other than a postponement for one month of the payment of the annual premium? There is nothing in the nature of things that makes the selection of the particular named day the only one that could be chosen for payment, or, for that matter, that makes it vital or necessary that it should be an annual day. It is vital only because the parties, by contract, have so stipulated; but if, by the same contract, they postpone such payment until a later day, there is no reason why they should not. In other words, if the parties to this contract dated December 28th had stipulated that the premiums should be paid January 28th, there is no reason why they should not do so. It follows, therefore, that if they made them payable on December 28th, but stipulated for a postponement of payment for one month, if desired, there is no reason why their agreement should not be enforced in precisely the same way as though they had expressly named January 28th as the day of payment. Now, if the first clause of this provision, standing alone, would have had that effect, the added provision for interest would not modify its character as a general unconditional postponement of payment. Then, too, the word "grace," when applied to payments, has a well-recognized meaning in law. Days of grace, by common acceptation, and in the absence of statute, came to be recognized as an absolute postponement of the day of payment of commercial paper, so that payment could not be demanded or suit maintained thereon within that time. Payment during the grace days was deemed performance of the contract to pay on the stipulated previous due day. When, therefore, we find these parties using the terms, "Grace in the payment of premiums," and "A grace of thirty days will be allowed in the payment of premiums hereafter due on this policy," we start with the thought, accepted and acted on in business, that a grant of days of grace, as generally used, signifies a positive and unqualified postponement of payment. It further appears that the grant of grace here stipulated for is accompanied by no limitation or condition as to the payment, and to introduce such conditions or limitations by implication is not only at variance with the rules of construction, but such limitations are against the spirit of the grant, the object of which is to prevent, not to effect, forfeiture. In other words, it is payment generally that is provided for. There is no provision by whom it shall be made, that the insured shall be in good health, or even that he shall be living. But we have not only the fact that silence on these points leaves the provision open to the construction that the payment

is not necessarily to be made by the insured, or that it is conditioned on his being alive, but, in our judgment, the preceding clause, which provides, "This policy does not go into effect until the first premium hereon has been actually paid during the lifetime and good health of the assured," throws light on the succeeding grace clause, here involved. That payment during the assured's life was insisted upon in the initial payment makes the omission of such provision in the following clause highly significant. Nothing was left to implication or construction in the earlier clause in that regard. If the intention of the draftsman was that payment under the grace clause was limited to the insured alone, the first clause challenged his attention, and warned him to insert it in the second. When he meant payment should be made of a particular premium during the life of the insured, he knew how to say it, and did say it in the earlier clause. When, therefore, he provided for subsequent payments, and postponed such payment for a month, there was every reason why, if the same conditions as provided in the first clause were to be imposed in the second, they should have been inserted. manifestly a paper of the importance of a life insurance policy must have been drawn with much care and by experienced counsel. We are warranted, therefore, in concluding the insertion of the condition that the insured be living when the premium was paid in the first provision, and its omission in the second, must have been designed. If the purpose of the draftsman was to differentiate the two, we carry out such intent by a construction which does differentiate them. On the other hand, if the purpose was to omit any such provision, lest its insertion in the grace clause should warn the insured that the supposed grace was a postponement of payment without protection—in other words, that insurance continued only if he lived, and did not need it, and was void if he died, and did—then construction should not come to the aid of such a purpose. Now, manifestly, an expressed provision in a grace-month clause that it could only be taken advantage of if the insured lived would warn the proposed applicant that, if he failed to pay on the due day of the policy, the insurance ceased, and the company was not insuring his life during such month, and would naturally not attract insurance. Indeed, in such case the inequitable result follows, that, when the insured paid on the last day of the grace month 12 months' premium, he was really receiving but 11 months' protection, for during the grace month the company was in no way liable for any insurance on his life. Such a provision would be highly inequitable—would enable companies to collect payment for one month out of every year without incurring risk. It would seem, therefore, that the purpose of the draftsman must have been to convey by this provision to the mind of one contemplating insurance that this provision was a substantial privilege—was a grace month in fact as well as in name, or, as termed by Chief Justice Fuller in McMaster v. New York Life Insurance Company, supra, that it entitled him to "one month of grace in addition, that is, to thirteen months immunity from forfeiture." Such a construction as is now contended for by the insurance company is also at variance with the fact that the insured paid for the postponement of his payment, since the delay, if taken advantage of by him, subjected him to the condition, "Provided, always, that, whenever advantage is

taken of this grace, interest at the rate of five per cent. per annum shall be paid to the Society for the time deferred." So it will be seen that, while postponement of the due day of the premium is termed "grace," it is in reality one for which the insured pays.

For all these reasons, we are led to the conclusion that the just construction of this contract is that payment of the premium was postponed one month; that, to compensate the company therefor, payment of interest was exacted; that provision was for payment generally during the month, and was not limited to being made by the insured. Mr. Taylor, having therefore, by the terms used in this particular, a stipulated right to pay his premium within 30 days of the annual due date, we are of opinion he had on the 24th of January, 1904, the day of his death, done or omitted no act which worked a forfeiture of his life insurance, and the first reserved question, namely, "whether the omission of the insured to pay the premium during his life precluded the right of recovery," should be decided in favor of the plaintiffs.

As to the second reserved question, we are equally clear it must be decided in favor of the plaintiffs. If, as found above, the insured had immunity from forfeiture for nonpayment of premium for 13 months following December 28, 1902, then his declining to pay before such immunity period ended could not work a forfeiture. He was not bound to pay during such grace month, nor could he be called upon to do so. Moreover, a statement during the grace month of his intention not to carry the policy could have no effect. It was made to a collecting agent, and the policy provided, "Agents are not authorized to make, alter or discharge this contract * * * or to bind this company in any way." The principals did not meet. No consideration passed between them on which to base a surrender of contract rights by the insured, nor did he mislead, influence, or affect the company by such declaration. Moreover, he could, during the several remaining days of the grace month, change his mind. In that regard we may well adopt the language of Judge Shiras in McMaster v. New York Life Insurance Company (C. C.) 90 Fed. 56, since his construction of the policy finally prevailed in McMaster v. New York Life Insurance Co., supra:

"Therefore, when McMaster died, these policies were in force, unless they had become forfeited under the provisions of the policy. There is nothing in the evidence which tends to show that McMaster intended to waive any benefit or protection these contracts would give him, or to yield up any right his estate might lawfully assert thereunder in the event of his death. There is some evidence tending to show that McMaster contemplated taking a policy in another company in lieu of part of his insurance in the defendant company, but this purpose had not progressed so far that he had released the defendant company from its liabilities on the policies sued on; nor can it be known, if McMaster had lived, whether in fact he would have finally forfeited any part of this insurance or not."

Indeed, treating the question of future conduct as ground on which to base an anticipatory breach, yet, to make it have such effect, there must have been an acceptance of such breach by the insurance company. Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 453.

Judgment will be entered in favor of the plaintiffs on the questions reserved.