# St. Louis & San Francisco Railroad Co. v. Cavender.

## Damage to Goods.

(Decided Nov. 24, 1910.   54 South. 54.)

1. *Carriers; Goods; Liability.*—Where freight is delivered to and accepted by carriers for immediate transportation in the usual course of business, its liability as a common carrier attaches; but where a carrier receives goods and something remains to be done before they can be transported, such as instructions as to destination, or the payment of charges or to await orders, the responsibility of a common carrier does not attach, and the carrier is not an insurer, but his liability is that of a warehouseman and its duty is to exercise ordinary care for the safety of the goods.

2. *Same; Duty to Provide Proper Accommodation.*—Where a railroad company holds itself out as a carrier of live stock, it has the legal obligation to provide proper facilities for receiving and handling live stock for shipment.

3. *Same; Complaint.*—Where a complaint has stated a cause of action for negligence of the carrier in caring for live stock after receiving them preparatory to transportation, the nature of the com-

[St. Louis & San Francisco Railroad Co. v. Cavender.]

plaint is not affected by the fact that the pleader adds an averment of further and cumulative negligence, also affecting the safe receipt and keeping of such live stock for shipment by adding an allegation that an agent of the defendant operating an engine negligently blew the whistle and as a proximate consequence of which plaintiff's live stock was greatly scattered and damaged.

4. *Same.*—A complaint averring in the alternative that a defendant or its servants or agents received the live stock for transportation, but not averring that such servant or agent in receiving such stock was acting for the defendant within the scope of his employment, is not subject to demurrer.

5. *Same.*—A count good as one for negligently keeping live stock in such a way as to injure them while getting them ready for transportation, is not rendered bad by the additional cumulative averment that a servant of the defendant operating a train negligently blew the whistle of his engine as a proximate consequence of which the live stock were frightened and damaged, in failing to allege that the engineer was engaged in defendant's business when he blew the whistle.

6. *Same; Nature of Liability.*—Carriers are responsible, by reason of the duties imposed upon them by the law of carriers, for the negligence of their servants in and about the carriage of freight, including its receipt for future carriage; so, where the servant is acting within his authority, the carrier is responsible, though the wrong or damage be done inadvertently and with the purpose to accomplish its business in an unlawful manner.

7. *Same; Limiting Liability.*—A recital in a contract framed as a limitation of liability of the carrier of live stock, that the rate is a reduced rate, is prima facie evidence of that fact, and where the shipper executes the contract without fraud or mistake, he is presumed to have known and consented to its terms.

8. *Same.*—Contracts creating special limitations on the liability of carriers for their own default are to be strictly construed against the carrier; the same rule applies as to a release against accrued damages.

9. *Same.*—Where the contract for the transportation of live stock provided that in consideration of a reduced rate the shipper released all causes of action for any damages that had accrued to him by any prior written or verbal contract concerning the stock, an action to recover for injury to stock sustained while in the carrier's stockpen awaiting transportation arrangements, was not affected by the release contained in the contract subsequently entered into although the injury occurred on the day before the execution of the contract, as the action was based on the carrier's negligence in the performance of duties imposed upon it by law without regard to the will or contract of the carrier.

10. *Same; Negligence of Plaintiff.*—When the action was for damages to live stock received by the carrier into its stockpens for transportation, and under the contract of affreightment plaintiff was to load the cattle into the cars and the defendant was not to be liable by reason of the cattle being wild or unruly, or in consequence of fright and it appeared that on the afternoon of the day on which the cattle were received by the defendant it furnished a car for loading,

[St. Louis & San Francisco Railroad Co. v. Cavender.]

and the plaintiff failed to load the car that afternoon, and on the same day the cattle broke out of the pen because of fright, and inflicted upon themselves or upon each other, the injuries complained of, it could not be said as a matter of law that plaintiff was guilty of negligence.

11. *Same; Evidence; Presumption.*—It is presumed that the station agent of carriers have power to make contracts for the transportation of freight and to do whatever is necessary in its forwarding, and where an agent at a station on a railroad holding itself out as a carrier of live stock receives into the carrier's stock pens live stock for future shipment, he must be taken prima facie at least as acting within the scope of his authority.

12. *Railroads; Acts of Servants; Scope of Employment; Presumption.*—It is presumed that a servant of a railroad company who is operating an engine on its track is acting within the scope of his employment in negligently blowing the whistle so as to render the company liable for injuries to animals frightened by the noise.

13. *Actions; Carriers of Live Stock; Nature and Form.*—Where the complaint averred that the carrier or its servant or agent received the live stock in its stockyards, preparatory to shipment, and that it was its duty to use due care to receive and safely transport and deliver such live stock to the consignee, and that the defendant so negligently conducted itself, in and about receiving said cattle for shipment, and that defendant's stockyard was insecure and unsafe, and that the insecurity of the yard resulted in injury to the cattle and damage to the plaintiff, it states a cause of action in case for negligence in caring for the cattle while being held by the shipper pending definite arrangements for its transportation.

APPEAL from Jefferson Circuit Court.

Heard before Hon. A. O. LANE.

Action by S. J. Cavender against the St. Louis & San Francisco Railroad Company, for damages for injury to stock, while being held for transportation. Judgment for plaintiff and defendant appeals. Affirmed.

CAMPBELL & JOHNSTON, for appellant. For a definition of "bill of lading," see Elliott on Railroads, Sec. 1415; 122 U. S. 79. An action on a bill of lading is ex contractu and tenders no issue of negligence vel non. In such case contributory negligence would be no defense.—*McCarty v. L. & N.*, 102 Ala. 193; *So. Ry. v. Webb*, 143 Ala. 304. The counts are not based on the common law obligation as is clear from the duty averred.—*S. & N. v. Henline*, 52 Ala. 606. Hence, the counts

[St. Louis & San Francisco Railroad Co. v. Cavender.]

must be held sufficient or demurarble upon general principles unaided by the terse generalities authorized by the statute.—*N. C. & St. L. v. Parker,* 135 Ala. 504, and cases supra. Liability as a comman carrier does not attach until the goods have actually come into the carrier's hands, and unless received, there can be no valid undertaking to deliver.—*M. & E. R. R. Co. v. Kolb,* · 73 Ala. 396; 122 U. S. 79; 105 U. S. 7; 1 S. W. 46; Elliott on Railroads, Secs. 1404-1462, and cases cited. Count 3 was subject to the specific objections pointed out by demurrer.—*Ensley Ry. Co. v. Chewning,* 93 Ala. '24; *B. R. L. & P. Co. v. Parker,* 47 So. 138. The act must be not only within the scope of the servant's employment but also committed in the accomplihsment of objects within the line of his duty.—*Palos C. & C. Co. v. Benson,* 39 So. 727; *Am. Bolt Co. v. Grinnell,* 48 So. 97; *Western Ry. v. Milligan,* 135 Ala. 205; *Daniels v. Carney,* 42 So. 452. Notice to an agent is not notice to a principal unless communicated or acquired while the agent is transacting the very business of his principal. —*C. of G. v. Joseph,* 125 Ala. 313. The averments added by amendment are insufficient in the alternative aspect and ineffectual.—*L. & N. R. R. Co. v. Bouldin,* 110 Ala. 185; *H. A. & B. R. R. C. v. Dusenberry,* 94 Ala. 413. It is not negligence in those operating a train to blow the whistle, and until the duty to refrain from blowing based on knowledge or notice is alleged, it is insufficient.—*Malcolmn v. L. & N.,* 46 So. 768; *Western Ry. v. Mutch,* 97 Ala. 194. On these authorities it is manifest that counts 4 and 5 are subject to the demurrers interposed. Counsel discuss the sufficiency of the plea, but without citation of authority.

GASTON & PETTUS, for appellee. No brief reached the Reporter.

SAYRE, J.—It is well settled that a common carrier becomes responsible as such only when freight is delivered to and accepted by it for immediate transportation in the usual course of business. If the goods are received, but something remains to be done before the goods can be sent on their way, "as where the goods are deposited without instructions as to their place of destination, or to await orders, or until the charges for transportation are paid, if that is required by the carrier," the duty and responsibility of the carrier is not that of an insurer, but that of a warehouseman who must exercise ordinary care for their safety.—*A. G. S. R. R. Co. v. Mt. Vernon Co.*, 84 Ala. 173, 4 South. 356; *L. & N. R. R. v. Echols*, 97 Ala. 556, 12 South. 304; Hutch. on Carriers (3d Ed.) § 72; Moore on Carriers, 258-9; *Barron v. Eldridge*, 100 Mass. 458, 1 Am. Rep. 126; *Dixon v. Central Rwy. Co.*, 110 Ga. 173, 35 S. E. 369. Counts 3, 4, and 5—the rest were taken out of the case by rulings favorable to the appellant—proceeded, not upon defendant's responsibility as a common carrier, nor upon a breach of contract for carriage, but for negligence in and about the performance of duty imposed by law upon defendant as a warehouseman after it had received plaintiff's cattle preparatory to putting them on their way—its duty as a warehouseman. The averment of counts 3 and 4 is that "defendant, or its servant or agent at Guin, Alabama, received said cattle in defendant's said stock yard preparatory to shipment," where "it was the duty of the defendant to use due and reasonable care to receive and safely transport and deliver said cattle to the consignee thereof at Birmingham, Alabama." The averment of the fifth count is that "the defendant conducted themselves in and about receiving said cattle for shipment," etc. Some of the language quoted seems to have been used without

clear reference to the distinction between the dutis and rsponsibilities which might devolve upon defendant as carrier or warehouseman, but there is no difficulty in the way of the conclusion that it was intended to state an action in case for negligence in caring for the cattle while held by the defendant pending definite arrangements for their transportation.

A railroad company, holding itself out as a carrier of live stock, is under legal obligation, arising out of its relations with the public, to provide proper facilities, such as stock yards, for receiving live stock offered to it for shipment.—*Covington Stock Yards v. Keith*, 139 U. S. 133, 11 Sup. Ct. 469, 35 L. Ed. 73; Moore on Carriers, 500, 501. This duty on the part of defendant being alleged, and the occasion for the exercise of care, namely, the receipt of plaintiff's cattle, not for immediate shipment, but prepatory thereto and in anticipation of a contract for shipment to be made, the further averment that defendant's stock yard was insecure and unsafe necessarily implies negligence; and it being shown in the complaint that the insecurity and unsafety of the yard resulted in injury to plaintiff, a cause of action is stated. And the conclusiveness of this result as matter of law is not affected by the fact that the pleader added an averment of further and cumulative negligence, also affecting the safe receipt and keeping of the animals for shipment, by alleging that an agent of defendant, operating a train, negligently blew the whistle of his engine, as a proximate consequence of which—both which, as we think count 3 must be construed , unless violence be done to the language used—plaintiff's cattle were greatly frightened and caused to break out of the stock yard, and were greatly scattered and damaged.

It is insisted, however, that counts 3 and 4 are defective for that in them it is alleged in the alternative that defendant or its servant or agent received the cattle, while it is not made to appear that defendant's servant or agent in receiving plaintiff's cattle was acting for defendant and within the scope of his employment. And further fault is found with count 3 because it fails to allege that the engineer was engaged in the transaction of the defendant's business when he negligently blew the whistle. As to the first proposition, it is possible, of course, that defendant's agent at Guin received plaintiff's catle into the defendant's stock yard for some purpose of his own, without authority from the defendant, and in disregard of defendant's purposes in the operatoin of its railroad and the maintenance of its stock yard. But station agents are presumed to have power to make contracts for the transportation of freight and to do whatever is necessary to send it on its way.— Moore on Carriers, 369. And we know enough of the customary operation of railroads, and the maintenance by railroad companies of stations in charge of agents, to be able to say with confidence that when an agent at a station on a railroad, holding itself out as a carrier of live stock, received into his employer's stock pens, constructed for that purpose, cattle delivered there for future shipment—all which is stated in counts 3 and 4 by most fair implication, if not in express words—he must be taken, prima facie at least, as acting within the scope of the duties he is employed to discharge. So likewise, the presumption must be that an agent of a railroad company who operates an engine upon its track is acting within the scope of his employment (*Woodward Iron Co. v. Herndon,* 114 Ala. 213, 21 South. 430), and that the company is responsible for his act in negligently blowing the whistle although that be done in a way

not usual or ordinary. Carriers are responsible by reason of the duties imposed by law upon them as carriers for the negligence of their servants in and about the carriage of freight, including its receipt for future carriage, and if the servant or employee is acting in the execution of his authority, the master is responsible though the wrong be done inadvertently or with the purpose to accomplish the master's business in an unlawful manner. In short, to have required of the pleader that he should avoid every construction which appellant has attributed to the complaint, would have greatly overworked the rule that the pleadings on demurrer are to be construed against the pleader, and would have resulted in a multiplication of words contrary to the spirit and letter of the statute which requires that pleadings must be as brief as is consistent with perspicuity and the presentation of issues in an intelligible form. At least it is safe to say that a demurrer addressed to the entire count should not have been sustained on account of a defect in the allegation in respect to the act of the engineer, the statement of which was a nonessential addition to a cause of action already sufficiently stated.

Our cases are legion in which general averments, analogous to those of the fifth count, have been approved.

There was no error in overruling the demurrers to counts 3, 4, and 5.

In the complaint it is alleged that plaintiff's cattle were received into the stock pens on the 7th day of March, 1908, and the averment is that they were injured on that day. Plea 5 brings into notice a contract of affreightment entered into between the parties on the next succeeding day. By the contract plaintiff agreed to load the stock upon the car. It also contained the following clause: "Third. For the consideration afore-

said, it is further agreed that neither the company nor
any connecting carrier shall be responsible for any dam-
age or injury sustained by said live stock, by reason of
any defect in the cars used in the transportation there-
of, in consequence of the escape of any of said live stock
through the doors and openings in said cars, or by rea-
son of the stock being wild, unruly, weak, maiming each
other or themselves, or from fright of animals, or from
crowding of one upon another, or from heat or suffoca-
tion, whether caused by overloading of said cars or oth-
erwise." The plea averred that "said cattle were placed
in a pen at Guin, Alabama, to be loaded in one of de-
fendant's cars; and said cattle, in charge of plaintiff,
were by him placed in said pen on March 7, 1908. De-
fendant avers that, on said March 7, 1908, to wit, 4 p.
m., it furnished plaintiff a suitable cattle car for said
stock, but that plaintiff failed or neglected to load them
therein, until, to wit, 9 a. m., on March 8th, and defend-
ant avers that on the afternoon or evening of March
7th, after defendant had furnished the car aforesaid,
said cattle became unruly or stampeded and broke out
of said pen, thereby inflicting upon themselves or up-
on each other the injury from which plaintiff sustained
damage as alleged." The consideration for this special
immunity from liability, moving from defendant to
plaintiff, was expressed in the contract as an agree-
ment to carry at a reduced rate. We deem it a suffi-
cient response to the argument made for this plea that
the facts set up do not import negligence on the part
of plaintiff as matter of law. Plaintiff's failure to load
the cattle upon the car within the hours designated—
to deal with one alternative of the plea—may have re-
sulted from a cause entirely apart from any negligence
on his part. When amended so as to allege that the act
of plaintiff was negligently done, as was the course tak-

en in framing the plea lettered "B," identical in all other respects, demurrer was overruled. There was no error in the court's ruling.

Plea 7, demurrer to which was sustained, seems to have bene designed to set up a clause of the contract (heretofore referred to) which was in this language: "Seventh. For the consideration aforesaid the shipper agrees to waive and release and does hereby release the company from any and all liability for or on account of delay in shipping said stock after delivery to its agent, and from any delay in receiving the same after tender of delivery, and for breach of any alleged contract to furnish cars at any particular time, and the shipper hereby releases and does waive and bar any and all causes of action for any damage whatsoever that has accrued to the shipper by any written or verbal contract prior to the execution hereof concerning said stock or any of them." The plea sets out the contract, and then avers that the alleged injuries sustained by plaintiff accrued before the execution of said written agreement. The recital in the contract that the rate is a reduced rate is prima facie evidence of that fact; and, the shipper having executed the contract, we have no choice but to presume, in the absence of fraud, mistake, imposition, or incapacity alleged, that he knew and consented to its terms. But the circumstances usually attending the execution of contracts creating special limitations upon the liability of the carrier for his own defaults are such that the courts unanimously hold that they are to be strictly construed against the carrier. Such must in reason also be the rule in respect to a release against accrued damages obscurely tucked away in the belly of an elaborate contract for carriage. The contract in question stipulated a release of damages accrued by any written or verbal contract prior to the

execution thereof. But it was no answer to the complaint which proceeded for damages arising out of negligence in the performance of duties imposed by law and without regard to the will or contract of the carrier. Damages so arising might also have been released upon sufficient consideration, but it does not appear in the letter of the contract that they were so released.

There is no error in the record, and the judgment will be affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON and EVANS, JJ., concur.