# Louisville & Nashville R. R. Co. v. Williams.

### Loss of Goods

(Decided November 23, 1916   Rehearing denied December 30, 1916.
73 South. 548.)

1. Carriers; of Goods; Contract; Construction.—Where the contract of carriage provided that the contract was executed and all liabilities thereunder terminated on delivery of it to a steamship, or on the steamship pier at the port, the railroad did not contract for the shipment of the cotton to the foreign port but only to deliver it to the connecting carrier as the shipper's agent in time for its shipment by a specified sailing date of the steamship.

2. Same; Delivery.—Where the railroad contracted to carry a shipment to a port and to deliver it to an ocean carrier it was not liable for the failure of the ship to transport the shipment where the railroad delivered it on the pier where the steamship was loading in ample time for loading.

3. Same; Delivery to Connecting Carrier; Notice.—Where a railroad contracted to carry cotton to a port and there deliver it to an ocean carrier for shipment, the railroad could not complete delivery to the ocean carrier by depositing the cotton on its pier without notice of the arrival of the cotton and its readiness for transfer; and such notice, as affecting the liability of the road to the shipper, must have been timed so as to give the ocean carrier an opportunity to take the cotton aboard for the specific sailing.

4. Same; Burden of Proof.—Under the contract of shipment in this case the railroad had the burden, as against the shipper, of showing that it gave notice to the ocean carrier of the arrival of the cotton at the pier in time for the ocean carrier to have taken the cotton aboard ship for the intended sailing.

APPEAL from Montgomery City Court.

Heard before Hon. WILLIAM M. WILLIAMS, Special Judge.

Action by J. J. Williams against the Louisville & Nashville Railroad Company for failure to deliver a shipment of cotton. Judgment for plaintiff and defendant appeals.   Affirmed.

Transferred from Court of Appeals under Acts 1911, p. 449.

HENRY L. STONE, JONES, THOMAS & FIELDS and GOODWYN & McINTYRE, for appellant. TILLEY & ELMORE, for appellee.

SAYRE, J.—When this case was before us on a former occasion we held that on the agreed facts, which remain unchanged, the bill of lading was the sole expositor of the contract of affreightment.—*Ex parte L. & N. R. R. Co.,* 176 Ala. 631, 58 South. 315.   That ruling, however, does not exclude the right or pro-

priety of looking to the precedent negotiation between the parties or the other facts shown by the agreement to the end that the contract may be interpreted according·to the true intent and meaning of the parties.  It must be observed—and to this point little or no attention has been given heretofore—that the document in question witnesses a contract for the benefit of plaintiff (appellee), on the one hand, and two carriers, on the other, to-wit, the defendant in this case and the owners of the steamship Saltmarsh, between whom, so far as appears, the only bond is that they are connecting carriers at Pensacola, Fla.  It is to be noted further that the contract into which these parties entered is evidenced by an elaborate document conceived and drawn with care and deliberation to express the conditions of the liability of the carriers issuing it.

"The language is chosen by the companies (carriers) for the purpose, among others, of limiting and diminishing their common-law liabilities, and if there be any doubt arising from the language used as to its proper meaning or construction, the words should be construed most strongly against the companies, because their officers or agents prepared the instrument, and as the court is to interpret such language, it is, as stated by Mr. Justice HARLAN, in delivering the opinion of the court in *National Bank v. Insurance Co.*, 95· U. S. 673, 679 [24 L. Ed. 563], 'both reasonable and just that its own words should be construed most strongly against itself.' "—*T. & P. Ry. Co. v. Reiss,* 183 U. S. 621, 626, 22 Sup. Ct. 253, 255 (46 L. Ed. 358).·

This language expresses the doctrine of this and all other courts.—*St. L. & San F. R. R. Co. v. Cavender,* 170 Ala. 6 1, 610, 54 South. 54.  The further purpose and plain effect of the contract was to divide out the responsibility of carriage between the defendant and the Saltmarsh.  The contract was for a shipment from Pensacola, Fla., to Liverpool.  The agreement of facts is that the cotton was delivered to defendant at the Atlantic Compress Company's compress near Pensacola, whence defendant transported it to its wharf at Pensacola for delivery to the Saltmarsh:  The agreed facts afford also an inference that the parties contracted for carriage by the Saltmarsh on its June sailing, 1908.  Under the head of "Conditions" this contract contained the following provision:

"(12) This contract is executed and accomplished and all liability thereunder terminates on the delivery of the said property

to the steamship, her master, agent, or servants, or to the steamship company, or on the steamship pier at the said port."

It contained other stipulations under the heading:

"With respect to the service after delivery at the port (A) first above mentioned [Pensacola] and until delivery at port (B) second above mentioned [Liverpool]."

(1, 2) From the nature of the contract, involving a shipment by land and sea to a foreign port, from the separate stipulations concerning service after delivery at Pensacola, and from the language itself of "condition 12," it is manifest that this condition operated for the benefit of the defendant just as other stipulations of the contract operated to limit the liability of the ocean carrier. It results that the defendant did ·not contract for the shipment of the cotton to Liverpool, but only to deliver it to the connecting carrier as the agent of the shipper in time for its shipment by the June sailing of the Saltmarsh. So then, after the Court of Appeals, giving effect, as it conceived, to the ruling of this court in *Ex parte L. & N. R. R. Co.,* *supra,* had reversed and remanded the cause for another trial (*L. & N. R. R. Co. v. Williams,* 5 Ala. App. 615, 56 South. 865, 59 South. 673), defendant filed special pleas in which it set up the condition or limitation upon its liability quoted above, and alleged in connection therewith: That it had "delivered said cotton on the steamship pier at Pensacola, at which pier the steamship Saltmarsh was loading, and it was so delivered in ample time for said steamship to have loaded it before leaving on her voyage to Liverpool; that through no fault of the defendant the said steamship Saltmarsh did not take the said cotton, and same was not loaded on the Saltmarsh by the master thereof," etc.

This was the substance of a good plea—we do not consider whether it may have been defective in respect of some formality of averment—but in considering its effect in the case the proper meaning of the word "delivered" in the peculiar circumstances needs to be kept in mind.

It is agreed that: "The steamer Saltmarsh commenced loading at Pensacola for Liverpool on June 12, 1908. The 100 bales of cotton involved in this case were switched by the defendant from the Atlantic Compress Company's plant to the Louisville & Nashville Company's wharf on June 17, 1908, at which time the steamer Saltmarsh was loading. That in loading the steamer Saltmarsh was tied up against the Louisville & Nashville Rail-

road Company's wharf. That freight was trucked over the wharf to the side of the steamer and hoisted thereon by winches, etc. The agent and stevedore of the Saltmarsh had charge of and control of the loading of the vessel and the selection of the freight tendered under the direction of her master. The 100 bales of cotton was tendered to the vessel or agent therefor by the Louisville & Nashville Railroad Company in the following manner: A list of all freight, including this 100 bales of cotton, engaged for the steamer was made out by the Louisville & Nashville Railroad Company and delivered to the master of the vessel, or the agents of the vessel."

It is further agreed that "in this case the foreign freight agent of the Louisville & Nashville Railroad Company was not notified that the cotton in question would not be loaded upon the steamer Saltmarsh," but no importance one way or the other is to be attached to this part of the agreement.

(3, 4) Neither the common-law duty of defendant, in possession at the end of its route, to deliver the cotton to the succeeding carrier, nor its contract duty to deliver in time for the June sailing of the Saltmarsh, were affected by "condition 12." One alternative of the condition amounted to this substantially: That delivery might be made to the Saltmarsh by delivery on the steamship pier at Pensacola. It is agreed, as we have before noted, that this cotton was placed upon the pier at which the steamship was loading five days in advance of its sailing, and upon this, we apprehend, there could be no difficulty in finding that this delivery was made in ample time to permit the transfer of the cotton to the steamer for its June sailing. But, in the circumstances shown by the agreement of facts, it would be altogether unreasonable, and no contention otherwise is made in briefs, to hold that defendant might complete a delivery within the meaning of "condition 12" by depositing the cotton on its pier or wharf without notice to the connecting carrier of the arrival of the cotton and its readiness for transfer. Notice in some efficient sort was necessary to constitute a delivery (*T. & P. Ry. Co. v. Reiss, supra*), and that notice, as affecting the liability of defendant to plaintiff under its contract, must have been so timed as to give the connecting carrier an opportunity to take the cotton aboard for its June sailing; for that, in substance, is what the defendant contracted to do. The agreement as to facts is not as full and clear to this point as a proper examination of

[Louisville & Nashville R. R. Co. v. Williams.]

the witnesses would have made the case; but the burden was on defendant, and the agreement fails to show when defendant gave notice of the arrival of the cotton at the pier. Non constat, it was too late for the June sailing, afer the vessel had sailed even. It results that defendant did not establish its pleas. The various rulings in the court below, where the case was tried by the court without a jury, were in accord with the views we have expressed, and the judgment will be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.

## ON REHEARING.

SAYRE, J.—In the original opinion in this case the result was made to turn upon the burden of proof, and in the application for rehearing much argument is given by appellant to its proposition that the matter set up in its special pleas was provable under the general issue, which is to be conceded, and that the burden of proof was upon appellee to show that the delay complained of was in fact the delay of appellant in performing its part of the contract of affreightment. We held, without comment, that the burden was upon appellant to show that the delay had not occurred in its performance of its part of the contract. This conclusion as to the location of the burden of proof is based, not upon the pleading, but upon the undisputed fact that appellant was in possession of the shipment under the contract and a finding that a delay did occur to appellee's injury. This conclusion is in accord with the authorities generally.—Central of Ga. v. Chicago Varnish Co., 169 Ala. 187, 53 South. 832.

Application overruled.